UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CARLA CALOBRISI**<br><br>**Plaintiff,**<br><br>v.<br><br>**BOOZ ALLEN HAMILTON INC.**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 1:13-cv-00952-ABJ |

**PLAINTIFF CALOBRISI'S MEMORANDUM OF POINTS IN AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS**

Plaintiff Carla Calobrisi, by and through counsel, pursuant to Local Rule 7(b), submits her Memorandum of Points and Authorities in opposition to Defendant's Motion to Dismiss Counts I, II, III, V, and VI of Plaintiff's Complaint and to transfer all remaining claims. Plaintiff properly filed her claims under Title VII, the District of Columbia Human Rights Act, and the ADEA in the Superior Court of the District of Columbia and, thus, Defendant's Motion should be denied in its entirety. Alternatively, Plaintiff respectfully requests that the Court defer any decision on Defendant's Motion until Plaintiff is afforded the opportunity to conduct discovery on the issues of venue and jurisdiction. By separate motion, Plaintiff will move the Court to allow Plaintiff venue and jurisdiction discovery.

**INTRODUCTION**

Prior to any formal discovery in this case, Defendant filed the instant Motion to Dismiss, attaching declarations of four of its own witnesses and documents from its own corporate records. As Plaintiff sets forth below, the facts asserted in Plaintiff's Complaint establish venue in the District

of Columbia under Title VII and the ADEA, jurisdiction under the DC Human Rights Act, and that transfer to Virginia is not in the interest of justice. Therefore, Defendant's motion must be denied. In the alternative, to the extent that the Court may be inclined to consider Defendants' allegations, Plaintiff requests that the Court defer a decision on Defendant's Motion until Plaintiff has the opportunity for discovery on venue and jurisdiction. As set forth in her separate Motion for Venue and Jurisdiction Discovery, Plaintiff requests the opportunity, after reasonable discovery, to counter Defendant's assertions. For these additional reasons, the Motion should be denied.

## FACTUAL BACKGROUND

Booz Allen maintains a "glass-ceiling" that intentionally excludes highly qualified women over 40 years old from reaching the highest levels of the firm. Booz Allen has repeatedly sabotaged the careers of women over 40 by, among other things, taking away their work at the very moment they would otherwise advance within the firm, forcing them out, and replacing them with men. Compl. ¶¶ 3, 67-92. This practice of gender and age discrimination comes from the male leadership, located in Washington, DC. Ralph Shrader, the Chairman, Chief Executive Officer and President sends a message to other men in charge of Booz Allen to follow his example of keeping women from attaining the highest positions in the firm. Shrader has been known to openly criticize male leaders of the firm who advocate for women. Shrader maintains his executive office in Washington, DC, where he holds meetings of the "Leadership Team" that essentially runs Booz Allen. Compl. ¶ 81.

Booz Allen's General Counsel, CG Appleby, worked closely with Shrader. Appleby was part of the all male Leadership Team and Appleby conformed to Shrader's practices. Referring to Shrader as the "King" and Booz Allen as a "Kingdom," Appleby stated that "we need to do what the King wants us to do or we would be thrown out." Compl. ¶ 82. Appleby followed Shrader's model

for running the firm by maintaining a glass ceiling in the Law Department. Compl. ¶ 83. Through the Declarations accompanying Defendant's Motion, Booz Allen asserts that Appelby made the decision to demote Ms. Calobrisi. Appelby Decl. at ¶ 9.

In early 2011, Robert Osborne was preparing to take over the position of General Counsel. Booz Allen claims that on February 15, 2011, Osborne met with then General Counsel Appleby, and Vice Presidents Bill Meyers and Doug Manya to discuss his strategic vision for the Law Department. Meyers Decl. at ¶ 12. Osborne envisioned and planned a Law Department that would be expanded with younger, less experienced attorneys. Compl. ¶ 50. Calobrisi Decl. at ¶ 5.

By 2011, Ms. Calobrisi, a highly talented attorney, had worked for the Law Department for over a decade, working her way up from Senior Associate to Principal and team lead for her three practice areas, real estate, international, and commercial. Calobrisi Decl. at ¶¶ 3, 4. Toward the end of 2010, when Ms. Calobrisi was 55 years of age, she was on the cusp of a major expansion in her practice that would likely have opened up further leadership opportunities and lay the groundwork for an eventual promotion to Vice President. Her supervisor, Vice President Bill Meyers, told her that it was going to be her "time to shine." Compl. ¶ 36; *see also* Ans. ¶ 36 (she could have the opportunity to shine).

In keeping with Booz Allen's firm-wide glass ceiling, however, the Law Department instead took away most of Ms. Calobrisi's work and demoted her back to Senior Associate. On January 26, 2011, Ms. Calobrisi was called into a meeting with General Counsel Appleby, Incoming General Counsel Bob Osborne, and Vice President Meyers. In an about-face from the earlier meeting with Meyers, Ms. Calobrisi's supervisors suddenly told her that they were taking away the majority of her work and, as a result, were demoting her from Principal (a position she had held since 2003) back

to Senior Associate. Ms. Calobrisi was specifically informed that the demotion decision was "was not performance-based." Compl. ¶ 42; Ans. ¶ 42 (admitting same).

In early 2011, Ms. Calobrisi had noticed that General Counsel Appleby, incoming Counsel Osborne, Vice President Meyers, and Vice President Manya were not in the office. Afer inquiring with a secretary, she learned that the male leaders of the Law Department were on a two-day retreat at the Cosmos Club in Washington, DC. Calobrisi Decl. at ¶ 5. When they returned from the meeting, it was clear that the meeting had involved discussions about the new direction for the Law Department in 2011 under incoming General Counsel Osborne. When Ms. Calobrisi filed her Complaint of discrimination and retaliation in this case, she believed that this meeting had taken place before she was informed of her demotion. Calobrisi Decl. at ¶ 5.

From the moment Ms. Calobrisi learned of her demotion and continuing through late spring of 2011, Ms. Calobrisi attempted to get back her principal position by engaging in ongoing conversations with her supervisors and other leaders of Booz Allen. Compl. ¶¶ 47-62. Ms. Calobrisi spoke to Bob Osborne and requested her job back, but he explained his vision for the Law Department involved expanding it with younger, less experienced attorneys. Ms. Calobrisi spoke with Vice President Meyers and requested to get back her job. Meyers accused Ms. Calobrisi of making a big deal about nothing and asserted that it was only a "title." ¶ 52. President Shrader was also known to accuse women who wanted leadership positions to be "too focused on titles." ¶¶ 89-90.

In late March 2011, Ms. Calobrisi asked the HR Department to consider whether the demotion was based on her age and gender. Compl. ¶ 58; Ans. ¶ 58. The firm, then, threatened Ms. Calobrisi with termination unless she signed a voluntary demotion letter, which she then signed to

4

save her job. Compl. ¶ 59. This demotion letter formalized and elaborated on the Firm's decision to demote Ms. Calobrisi. In particular, the letter informed Ms. Calobrisi that she would never get a raise again. ¶ 59-60.

At the end of May 2011, during her performance evaluation, when Ms. Calobrisi indicated to her supervisor, VP Meyers, that she believed the demotion was based on her age and gender, Meyers immediately responded that Ms. Calobrisi "can't get over it," she should "transition" out of the firm. Compl. ¶ 61. Other women have complained that Shrader and the Leadership of Booz Allen do not like "pro woman, feminist things" or complaints of discrimination. Ex. 2, Finn Compl. Ex. 3, Booz Allen Ans. Interrog. Having explored numerous avenues toward getting her job back, but encountering staunch resistance, threats, and even being told to leave the firm, Ms. Calobrisi had no choice, but to resign. The firm then replaced her with a younger, male attorney.

## SUMMARY OF ARGUMENT

Ms. Calobrisi properly filed her claims in the Superior Court of the District of Columbia. She has asserted a pattern of discrimination against women emanating from the Booz Allen Leadership located in the District of Columbia and she has a factual basis to assert that the decision to demote her took place in the District of Columbia. Defendant disputes this allegation by generally asserting that it was at a meeting in Virginia "that the decisions were made that impacted Plaintiff" or "all of the alleged employment decisions . . . occurred in Virginia." Meyers Decl. ¶¶ 9, 13; Manya Decl. ¶ 5; Appleby Decl. ¶¶ 11, 15; Osborne Decl. ¶¶ 5. Yet, Defendant's submissions do not rule out Plaintiff's specific claim that a Cosmos Club meeting took place in January 2011, nor do Defendant's submissions rule out Plaintiff's claim, as shown below, that discriminatory practices and decisions that impacted her occurred in the District of Columbia. At best, from the point of view

5

of Defendant, the moving party on the Motion to Dismiss, the parties' assertions are in equipoise, absent an opportunity for Plaintiff to test the Declarants' assertions through discovery. As such, the Court should either deny Defendant's Motion entirely or defer a ruling on Defendant's Motion until Plaintiff is afforded discovery on venue and jurisdiction.

Additionally, in this case of gender and age discrimination and retaliation, the jury will be asked to consider (1) *why* Defendant Booz Allen decided to demote Ms. Calobrisi where Defendant admits that the decision was not performance-based; (2) *why* in March/April 2011, Defendant issued Ms. Calobrisi a letter indicating that she could never get a raise again; and (3) *why* over the course of Spring 2011 Defendant refused to reconsider the demotion decision, told Ms. Calobrisi it was only a "title," threatened her job if she would not agree to the demotion, and ultimately told her to leave the firm when she complained of gender and age discrimination.

Ms. Calobrisi claims that these actions resulted from and were the effects of discriminatory and retaliatory employment practices occurring in and emanating from Washington DC. First, President Ralph Shrader from his executive office in Washington, DC carried out a practice of sex discrimination that he expected other male leaders, such as General Counsel Appleby, to enforce. Defendant has asserted that Appleby made the decision to demote Ms. Calobrisi. Appleby Decl. ¶ 9. Second, at the February 2011 Cosmos Club meeting, Law Department leaders focused on Bob Osborne's vision for the Law Department, which vision he described to Ms. Calobrisi as expanding the Department with "younger" lawyers. Appleby Decl. ¶ 14; Osborne Decl. ¶ 8; Compl. ¶ 50. Because a jury could find that Booz Allen subjected Ms. Calobrisi to a sex- and age-based demotion and constructive discharge as a result of discriminatory decisions made in the District of Columbia, Title VII venue is proper and there is jurisdiction under the District of Columbia Human Rights Act.

Moreover, Defendant fails to establish that transfer of any of Ms. Calobrisi's claims to Virginia would be in the interest of justice.

## ARGUMENT

I.  **Plaintiff properly filed her claims in the District of Columbia because Booz Allen engages in unlawful discriminatory employment practices in the District of Columbia.**

Defendant's Motion to Dismiss Plaintiff's Title VII and DCHRA claims should be denied because Plaintiff alleges that Booz Allen engaged in unlawful employment practices in the District of Columbia. "On a motion to dismiss for improper venue, the court must accept as true a plaintiff's well-pled allegations and draw all reasonable inferences from those allegations in the plaintiff's favor, although the court need not accept a plaintiff's alleged legal conclusions as true." *McQueen v. Harvey*, 567 F.Supp.2d 184 (D.D.C. 2008). Based on declarations from four witnesses who have not yet been deposed, Defendant makes the very general claim that "the operative meetings and discussions took place in Booz Allen's McLean, Virginia office . . . ." (Def. Mem. at 2.) Yet, Defendant does not address "the entire universe of decisions relevant to [Calobrisi's] allegations" and, thus, Defendant's Motion must be denied. *Turnley v. Banc of Am. Inv. Servs.*, 576 F.Supp.2d 204, 214 (D.Mass 2008).

The central employment practices at issue in this case are Booz Allen's creation of a "'glass ceiling' that intentionally excludes highly qualified women over 40 years old from reaching the highest levels of the firm" and the Law Department's decision to expand the Department with younger lawyers by demoting and constructively discharging its oldest, most senior, female attorney, Plaintiff Calobrisi. Compl. ¶¶ 3, 50, 86; *see generally* Compl. ¶¶ 67-92. These practices were developed, maintained, and discussed in Washington, DC. To the extent that Defendant's pre-

discovery, untested evidence suggests that certain personnel decisions may have occurred in Virginia, the Court should defer decision on those arguments until Ms. Calobrisi is afforded discovery.[1]

Taking Plaintiff's well-pled facts and drawing all reasonable inferences in her favor as the Court must at this stage, Plaintiff has stated a claim that Defendant's pattern or practice of discrimination against women over 40 took place in Washington, DC and that this practice caused the specific decision to demote Ms. Calobrisi. As such, both venue for Plaintiff's federal claims and jurisdiction under DCHRA are sufficiently established because the alleged unlawful employment practices occurred in Washington, DC.

      A.      **Venue is Proper in the District of Columbia Under Title VII.**

Under Title VII, Plaintiff could file her claims "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed." 42 U.S.C. § 2000e-5(f)(3). "Only one of Title VII's venue provisions need to be satisfied in order for venue to be proper." *Turnley*, 576 F.Supp.2d 204, 212 (D. Mass 2008) (citing *Darby v. U.S. Dep't of Energy*, 231 F.Supp.2d 274, 277 (D.D.C. 2002)).[2] Because Plaintiff's Complaint sets forth unlawful employment

---

[1] For example, Defendant's witness statements and documents reflecting a meeting among the four witnesses in February at the Cosmos Club do not rule out a meeting or meetings involving some or all of the same participants in January 2011 at the Cosmos Club, where Ms. Calobrisi asserts in her Complaint that the decision to demote her was made. Compl. ¶¶ 43-44. Plaintiff, thus, requests the opportunity for discovery on any late 2010 or early 2011 meeting at the Cosmos Club, to be set forth in her Motion for Discovery.

[2] Booz Allen misreads Title VII's venue provision when it suggests that the Court engage in a three-"prong" analysis to determine if venue lies in the District of Columbia. (Def. Mem. at 9.) A plain reading of 42 U.S.C. § 2000e-5(f)(3) indicates any one of the three bases specified are sufficient to create venue and Defendant's claim that there are "three required venue categories" is wrong. (Def. Mem. at 10.)

practices committed in Washington, DC, the first of Title VII's venue provisions is satisfied and, thus, the Court should deny both Defendant's Motion to Dismiss her Title VII claims and Defendant's Motion to Transfer venue of her Title VII claims. Notably, Defendant has provided no evidence to defeat Plaintiff Calobrisi's claim that it engages in a discriminatory employment practice from its District of Columbia corporate office. *Turnley*, 576 F.Supp.2d at 212.

> 1) *Facts suggest that the demotion decision was made in the District of Columbia.*

Defendant challenges Title VII venue in the District of Columbia by claiming that the decision to demote Plaintiff occurred before the law firm leaders met in Washington, DC. Yet facts support Ms. Calobrisi's conclusion that the demotion decision was made at a Cosmos Club meeting in January 2011 where the Law Department leaders discussed the reorganization that led to her demotion. Compl. ¶¶ 43-44; Calobrisi Decl. ¶ 5. Defendant has submitted Declarations and documents that suggest that Defendant held a meeting in February 2011 at the Cosmos Club, but those submissions do not rule out that there was a meeting in January 2011 at the Cosmos Club. As such, Plaintiff asks that the Court defer a decision on this point until Plaintiff has been afforded an opportunity for discovery on these issues.

> 2) *Booz Allen's practice of discrimination against women is carried out from the District of Columbia.*

In its Motion, Defendant fails to address the "universe" of decisions that impacted Plaintiff Calobrisi. *Turnley*, 576 F.Supp.2d at 214. A plaintiff may establish venue under Title VII where she was "injured as a consequence" of decisions made by senior management in another office. *See id.* Booz Allen maintains a "'glass ceiling' that intentionally excludes highly qualified women over 40 years old from reaching the highest levels of the firm." Compl. ¶ 3. Ralph Shrader, the Chairman,

Chief Executive Officer and President, who maintains his executive office in Washington DC, directs this practice:

> Shrader has actively excluded women from the highest positions within the firm and sent a message to the other men in charge to follow his example. Upon information and belief, Shrader openly criticized male leaders of the firm who advocated for women.

Compl. 80; *see also* Compl. ¶¶ 5, 81.

Defendant claims that Appleby made the decision to demote Ms. Calobrisi. Over the court of Appleby's tenure, he created a law department that followed Shrader's example with respect to promoting male leaders while not letting female attorneys advance too far. Compl. ¶¶ 14-54, 66, 83-86. Appleby worked closely with Shrader and participated in Shrader's all male leadership team that essentially ran Booz Allen. Compl. ¶ 81.

For instance, toward late 2010, Shrader held meetings with his all male Leadership Team, including Appelby, in the District of Columbia. During those meetings, the Leadership Team decided to terminate Molly Finn, who otherwise would have been one of the highest ranking female partners in Booz Allen. Ex. 2, Finn Compl. ¶¶ 89-90, 9; Ex. 3 (Booz Allen Ans. Interrog.). As stated in Plaintiff's Complaint, Ms. Finn is one of the many women who Plaintiff claims suffered discriminatory setbacks to her career, that included being stripped of her work and terminated without good reason Compl. ¶ 69. The decisions of the Leadership Team in Washington, DC in 2010, in which Appleby participated, set the example for how to treat women on the cusp of expanding their influence in the firm. Compl. ¶¶ 81-82.

Just a few months after attending and participating in this meeting, Appleby decided along with Osborne that Calobrisi, the oldest and most senior female attorney in the Law Department, who

was on the verge of enhancing her career, should be stripped of most of her work despite the fact that she did not have any performance problems. In fact, by demoting Ms. Calobrisi, the Law Department cleansed the department of a second female over 40 who might have otherwise become vice president. Compl. ¶ 84 (Robin Shaffert was fired in 2007). Since the practice of Shrader was to keep women from excelling at Booz Allen and this practice was dictated by Shrader and the Leadership Team in Washington, DC and then carried to fruition in other offices, that practice which was committed with intent to discriminate establishes a discrimination claim with proper venue in the District of Columbia. *See Turnley*, 576 F. Supp. 2d at 25-26.

When Ms. Calobrisi complained to her supervisor, Vice President Meyers, he too followed Shrader's lead by accusing her of being too focused on a title. Compl. ¶¶ 89-90 (Shrader demonstrates to the men in charge that when a woman advocates for her own advancement, she should be accused of being "focused too much on titles.") As a result of discriminatory and retaliatory employment practices emanating from the top of the firm, the Law Department enforced the firm's glass ceiling by first demoting Plaintiff Calobrisi just before she was about to experience an expansion of her practice that would have opened up the possibility of a promotion to vice president and then by constructively discharging her when she complained.

                    3)      *Booz Allen has admitted that the Law Department Met in the District of Columbia to Focus On Bob Osborne's strategic vision.*

In 2011, when Booz Allen suddenly and unexpectedly demoted Ms. Calobrisi, Plaintiff asked several Booz Allen leaders why she was demoted. In response, Ms. Calobrisi was told that the reason for her demotion was the reorganization of the Law Department and, in particular, Osborne's vision of the department. Compl. ¶¶ 50, 58 (position had been rescoped); Calobrisi Decl. ¶ 6. Thus,

the broader practice at issue in her demotion– by the words of the decision-makers themselves–was Booz Allen's practice of expanding the Law Department with younger attorneys and–in keeping with Shrader's directive– leaving the negative effects of that practice for older females in the department.

Booz Allen has attached four declarations to its Motion to Dismiss the men in charge of the Law Department when Ms. Calobrisi was demoted. These declarations claim that there was a meeting at the Cosmos Club in Washington, DC in February 2011 in which they discussed "Mr. Osborne's strategic vision for the Law Department for when he would assume his role as the Firm's General Counsel later that year." Meyers Decl. ¶ 12; Manya Decl. at ¶ 8; Appelby Decl. at ¶ 14; Osborne Decl. at ¶ 8. Each male leader also claims that "[A]t no time during this meeting was any decision made with respect to Plaintiff." Meyers Decl.¶ 12. For the Court to fully probe the meaning of these claims, Plaintiff submits below that discovery would be needed. Nevertheless, what is made clear by these declarations is that at least one critical meeting for implementing Osborne's vision of the Law Department took place in Washington, DC.

Thereafter, when Ms. Calobrisi asked Appleby for her job back, he said that "Bill had to make his own mistakes." Calobrisi Decl. at ¶ 6. Appleby thereby framed the issue as resulting from Osborne's vision. When Calobrisi asked Meyers who made the decision, he said it was Appleby and Osborne together. Calobrisi Decl. at ¶ 8. To the extent that the February Cosmos Club meeting set the planned expansion of the law department with younger attorneys, this discriminatory decision occurring in DC helps explain why Booz Allen resisted Ms. Calobrisi's efforts to get her job back in Spring 2011, issued her a memo in March/April 2011 stating that she would not get a raise, threatened her with termination when she complained of discrimination, and essentially forced her out of the firm. *See* Calobrisi Decl. at ¶ 7. Therefore, given that Booz Allen *admits* that the

"strategic vision" for the Law Department was a topic in the District of Columbia strategic meeting, and there is a nexus between Calobrisi's constructive discharge and that "vision," Booz Allen's declarations support Ms. Calobrisi's claim that Booz Allen made discriminatory decisions in the District of Columbia in violation of Title VII, the DCHRA, and the ADEA. Thus, venue is proper.

  **B.**  **Defendant's Motion to Dismiss Plaintiff's Title VII and DCHRA claims should be denied and alternatively, the Court should defer the decision until discovery.**

    *1)*  *Ms. Calobrisi reasonably filed suit in the District of Columbia.*

"[T]he interest of justice generally requires transferring a case to the appropriate judicial district in lieu of dismissal." *Johnson v. Deloitte Servs., LLP*, 2013 U.S. Dist. LEXIS 53443 (D.D.C. Apr. 15, 2013) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962) among other cases). While Defendant seeks the severe measure of dismissing Ms. Calobrisi's Title VII claims, no justice would be served by dismissing Ms. Calobrisi's claims.

Booz Allen cites only *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*, 760 F.2d 312 (D.C. Cir. 1985), but that case is nothing like the one at bar. (Mot. at 10-11.) In *Noxell*, the California defendant only had *de minimis* business in the District; it had no offices here, it did not market its product here, and it sold little product here, and venue was determined under a different statute. *Id*. at 316-17. Here, Ms. Calobrisi understood key decisions to have been made regarding her employment in the District and the policies that led to Booz Allen's unlawful conduct flowed from the President working out of Booz Allen's main headquarters in the District. Ms. Calobrisi entirely reasonably determined that the unlawful employment decision was made in the District and was reasonable in filing her Complaint in Superior Court. As shown above, Plaintiff has ample reasonable grounds to file her claims in the Superior of the District of Columbia and, thus,

Defendant's request to dismiss Title VII claims must be denied.[3]

       2)    *Defendant provides no basis to dismiss the D.C. Human Rights Act Claims.*

As shown above, the known facts suggest that Booz Allen was engaging in unlawful employment practices in violation of the DC Human Rights Act when it created discriminatory policies (whether spoken or unspoken) and made discriminatory decisions in the District of Columbia. See *Monteilh v. AFSCME*, 982 A.2d 301, 304 (D.C. 2009) (discriminatory decision made in the District but felt elsewhere covered by DCHRA). Therefore, there is jurisdiction under the DCHRA and Defendant's Motion should be denied.

Furthermore, Booz Allen seeks to dismiss Ms. Calobrisi's D.C. Human Rights Act ("DCHRA") claims on "subject matter jurisdiction" grounds, but this effort is misguided. This Court has original jurisdiction over Ms. Calobrisi's federal claims. 28 U.S.C. § 1331. This Court therefore has supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Ms. Calobrisi's DCHRA claims –that Booz Allen discriminated against her because of her sex and this discriminatory policy and practice emanated from Booz Allen's headquarters in the District– are directly related to her Title VII claims over which this Court has original jurisdiction. This Court therefore has subject matter jurisdiction over Ms. Calobrisi's DCHRA claims.

Booz Allen seeks to escape this conclusion suggesting that the Superior Court would not

---

[3] Further buttressing venue in the District of Columbia, the EEOC transferred this case to the District of Columbia Office of Human Rights in September 2012 and that the OHR held the case for 8 months. During that time, Booz Allen never questioned whether there was jurisdiction under the DCHRA or whether the District of Columbia was the proper location to handle Calobrisi's Complaint.

have had jurisdiction over Ms. Calobrisi's DCHRA claim. (Mot. at 10-11 (citing *Matthews v. Automated Business Systems & Services, Inc.*, 558 A.2d 1175 (D.C. 1989).) Yet, under the DCHRA, the Superior Court had subject matter jurisdiction where the decision was made in the District of Columbia. *Monteilh*, 982 A.2d at 304-05.

Here, the facts regarding whether the DCHRA covers Booz Allen's conduct here are in substantial dispute. Ms. Calobrisi's Complaint reflects (1) discussions over her employment status took place in the District of Columbia (Compl. ¶¶ 43-44; and (2) the discrimination resulted from practices and policies emanating from Booz Allen's President, located in Washington, D.C. (Compl. at ¶¶ 67-92.) Booz Allen disputes the location of some decisions that impacted Ms. Calobrisi, but presents no evidence to rebut her claim that a policy flowing from the District required discrimination against women that impacted Ms. Calobrisi's employment Rather than resolve this factual dispute based on the record now before the Court, Plaintiff requests that the Court defer any such decisions until Plaintiff is afforded the plaintiff the opportunity to conduct full discovery on this issue. *See Monteilh*, 982 A.2d at 305. In *Monteilh*, the parties held an evidentiary hearing as to whether the facts supported jurisdiction under the DCHRA. *Id*. at 301-02 & n.2. Even still, the Court of Appeals was not satisfied that the record was developed sufficiently to make a determination as to subject matter jurisdiction, and remanded the case for additional factual development. *Id*. at 305. Thus, even if the Court is not satisfied of the Court's subject matter jurisdiction based on Ms. Calobrisi's Verified Complaint, under District of Columbia law, additional discovery and an evidentiary hearing are required before the Court decides this issue. *Id.*

II.     **Transfer to Virginia is not in the interest of justice**

Defendant concedes that venue is properly in the District of Columbia for Plaintiff's ADEA

claims. Notably, under 28 U.S.C. § 1391 (b) (1) "a civil action may be brought in . . . a judicial district in which any defendant resides." Because Booz Allen resides in the District of Columbia, venue is proper. *See* 28 U.S.C. § 1391 (c) (explaining that residency for a defendant entity shall be in "any judicial district in which such defendant is subject to the court's personal jurisdiction").

Despite the fact that venue is easily established under the ADEA, Defendant attempts–but fails– to show that transfer to Virginia would be in the interest of justice pursuant to § 1404 (a) ("[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.")

Defendant focuses on the fact that Plaintiff worked in Virginia. In this case, however, the location of Plaintiff's physical work location is not determinative of convenience or justice. Ms. Calobrisi worked on cases throughout the United States, with the New York office of Booz Allen, and took numerous international trips to work for Booz Allen. Calobrisi Decl. ¶¶ 4-5. Thus, the fact that Ms. Calborisi's desk was in Virginia is of no moment.

Defendant also claims that somehow venue should be in Virginia based on the location of Ms. Calobrisi's employment records. (Def. Mem. at 9.) This is a misapplication of the Title VII venue provision because Plaintiff already establishes Title VII venue because she alleges unlawful employment practices committed in the District of Columbia. Further, this is not a case that should focus on performance-related employment records located in Virginia. Booz Allen has admitted that the demotion decision was not performance-based. Ans. ¶ 42. Instead, this is a case about how Booz Allen was run from the top and the evidence suggests that top level decisions were being made in the District of Columbia in 2010 and 2011. This is a case about Appleby's conformance with

16

Shrader's policy of excluding women and Osborne's strategic vision of expanding the Law Department with younger lawyers. Because Booz Allen maintained and developed these practices in the District of Columbia particularly during meetings of the all male Leadership Team and the all male leadership of the Law Department, there are witnesses and records based in the District of Columbia.

Moreover, this Court has an interest in enforcing the local DC Human Rights Act and the federal anti-discrimination claims where Defendant violated the laws in the District of Columbia. Booz Allen should not be permitted to escape the oversight of local courts who have a strong interest in enforcing their local human rights act simply because the discriminatory meetings and decisions made in Washington, DC happen to affect women who are assigned to offices outside of Washington, DC.

Finally, Defendant's arguments regarding convenience (Def. mem. at 15) are a little surprising given the fluidity of its operations between Virginia and the District of Columbia. It is true that several witnesses work in the Virginia office, but some of those same witnesses chose to go to the Cosmos Club in the District of Columbia in order to focus on the strategic vision for the Law Department. Moreover, as a member of the all-male Leadership Team, Appleby was expected to attend meetings at the Washington, DC office. The location of witnesses is not an issue of convenience in this case. These are witnesses who often move back and forth between Virginia and the District of Columbia.

What is more, Courts normally give considerable deference to the plaintiff's choice of forum. *Foote v. Chu*, 858 F. Supp. 2d 116, 121 (D.D.C. 2012) (refusing to transfer case). Even though this deference is somewhat diminished by the fact that Ms. Calobrisi resides outside the District this is

balanced by the fact that the Defendant "resides just outside" of the District, and even had its "flagship office" in this jurisdiction (*see* Calobrisi Decl. at ¶¶ 9-10), weighing against the transfer of the case. *See Foote*, 858 F. Supp. 2d at 121 (Defendant's residence close to the District balanced against transfer to New Mexico).

III.    Defendant has failed to assert any legal or factual basis for dismissal under Rule 12(b)(6).

Although Booz Allen asserted in the opening sentence of its motion that it sought relief pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted, it has not presented any legal or factual argument to support a grant of its motion based on Rule 12(b)(6). Accordingly, the Court should deny Defendant any relief under Rule 12(b)(6). Had Defendant properly made an argument for dismissal on that ground, Plaintiff would have sought an "opportunity to present facts essential to justify her opposition" through discovery pursuant to Rule 56(d), as the Declarations and other documents attached to Defendant's motion are matters outside the pleadings that would have converted the pleading to a motion for summary judgment. *First Chicago International v. United Exchange Co.*, 836 F.2d 1375, 1377, 1380 (D.C. Cir. 1988).

## CONCLUSION

For these reasons and any others the Court may find, Plaintiff respectfully requests that Defendant's Motion should be denied in its entirety. Alternatively, Plaintiff respectfully requests that the Court defer any decision on Defendant's Motion until Plaintiff is afforded the opportunity to conduct discovery on the issues of venue and jurisdiction.

Respectfully submitted,

WEBSTER, FREDRICKSON, CORREIA & PUTH PLLC


　　/s/ *Linda M. Correia*
Bruce A. Fredrickson #933044
Linda M. Correia #435027
Cedar P. Carlton #480255
1775 K Street, NW, Suite 600
Washington, D.C. 20006
(202) 659-8510
Bfredrickson@wfcplaw.com
Lcorreia@wfcplaw.com
Ccarlton@wfcplaw.com

Attorney for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of July 2013, a true and accurate copy of the foregoing Plaintiff Calobrisi's Memorandum of Points and Authorities in Opposition to Motion to Dismiss was filed electronically. Service required by Fed. R. Civ. P. 5(a) has been made, as notice of electronic filing will be electronically mailed to the following:

Stephen W. Robinson (D.C. Bar No. 282731)
srobinson@mcguirewoods.com

Sarah A. Belger (D.C. Bar No. 986105)
sbelger@mcguirewoods.com

Melissa L. Taylormoore (D.C. Bar No. 992636)
mtaylormoore@mcguirewoods.com

/s/ *Bruce A. Fredrickson*
Bruce A. Fredrickson  #933044
Webster, Fredrickson, Correia & Puth, PLLC
1775 K Street, N.W.
Suite 600
Washington, D.C. 20006
(202) 659-8510

Attorney for Plaintiff