UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CARLA CALOBRISI,**<br><br>Plaintiff,<br><br>v.<br><br>**BOOZ ALLEN HAMILTON, INC.,**<br><br>Defendant. | Case No. 1:13-cv-00952 (CRC) |

### MEMORANDUM OPINION

Plaintiff Carla Calobrisi was demoted at the age of 55 after spending 11 years rising through the ranks of Booz Allen Hamilton's legal department. She claims that her demotion and resulting constructive discharge were based on her age and gender. Arguing that none of the events that led to Calobrisi's demotion took place in Washington, D.C., Booz Allen moved to dismiss Calobrisi's claims or transfer them to the Eastern District of Virginia, where both Calobrisi and her supervisors worked. The parties have conducted jurisdictional discovery to determine whether any decisions surrounding Calobrisi's demotion took place in the District of Columbia. While Calobrisi contends that discovery has not foreclosed the possibility that the decisions to demote and constructively discharge her occurred in D.C. and, regardless, that these decisions arose from general discriminatory practices that emanated from Booz Allen's D.C. offices, the Court finds that Calobrisi has failed to meet her burden to establish that venue is appropriate in D.C. The Court therefore will dismiss Calobrisi's D.C. law claims and transfer the remainder of the case to the Eastern District of Virginia.

### I.   Background

Calobrisi, a resident of Maryland, brought suit in the Superior Court of the District of Columbia alleging gender and age discrimination and retaliation in violation of the District of

Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401, Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621. After removing the case to this Court, Booz Allen moved to dismiss Calobrisi's Title VII and DCHRA claims for lack of venue and lack of subject matter jurisdiction, respectively, and to transfer her remaining ADEA claims to the Eastern District of Virginia. Before ruling on the motions, Judge Wilkins, who was previously assigned to this case, permitted Calobrisi to take limited jurisdictional discovery on the material events leading to her alleged discriminatory demotion and constructive discharge. Order at 1–2 (Dec. 5, 2013). Upon concluding that discovery, the parties submitted supplemental memoranda and the Court held a hearing on July 2, 2014. Unless otherwise noted, the following facts are drawn from the allegations in Calobrisi's complaint, which the Court accepts as true unless contradicted by evidence in the record.

Calobrisi worked as a lawyer in Booz Allen's legal department for over a decade, rising to the level of "team lead" for the department's real estate, commercial transactions, and infrastructure practice groups. Compl. ¶¶ 11, 20. Calobrisi and the other senior members of the legal department worked in the company's McLean, Virginia office. On January 26, 2011, in that office, Calobrisi met with Booz Allen's then-General Counsel CG Appleby, Vice President William Meyers, and incoming General Counsel Robert Osborne, who informed her that she would be demoted to senior associate and work solely in the real estate group starting at the beginning of the next fiscal year. Id. ¶ 41. Calobrisi repeatedly requested to be reinstated to her former position and to discuss her concerns about discriminatory treatment with human resources, but Booz Allen declined to reverse the demotion. Id. At a subsequent meeting on April 5, 2011, also in the McLean office, Meyers told Calobrisi to sign a memorandum stating that her demotion was voluntary or else she would be terminated. Id. ¶ 59. Calobrisi signed the letter but resigned later that year. Id. ¶ 62–63. Calobrisi

alleges that being coerced to sign the letter, along with management's refusal to reconsider the decision to demote her, constituted constructive discharge.

Although Calobrisi and her supervisors worked in Virginia and her demotion was communicated to her in Virginia, Calobrisi alleges in her complaint, upon information and belief, that the decision to demote her was made during an "off site" meeting at the Cosmos Club in Washington, D.C., which she says took place before she was told of her demotion on January 26. Id. ¶¶ 43–44. In response to that allegation, Booz Allen submitted sworn declarations from Calobrisi's supervisors and another senior lawyer in the department stating that (1) they decided to demote Calobrisi at a January 20, 2011 meeting in McLean; (2) the only Cosmos Club meeting they attended occurred on February 15, 2011, after the demotion was conveyed to Calobrisi on January 26; and (3) the Cosmos Club meeting focused on the "strategic vision" for the legal department and did not involve any discussion of specific personnel, including Calobrisi. Def.'s Mot. to Dismiss Ex. 1, Declaration of William Meyers ("Meyers Decl.") ¶¶ 9, 11–12, Ex. 2, Declaration of Douglas Manya ("Manya Decl.") ¶¶ 5, 7–8, Ex. 3 Declaration of CG Appleby ("Appleby Decl.") ¶¶ 11, 14–15, Ex. 4 Declaration of Robert Osborne ("Osborne Decl.") ¶¶ 5, 7–8. Her supervisors confirmed these facts in depositions taken during jurisdictional discovery. Def.'s Supplemental Mem. Ex. 3, Deposition of Meyers ("Meyers Dep.") 45:21–22 & Ex. 4, Deposition of Osborne ("Osborne Dep.") 45:5–6.

Recognizing that the pivotal Cosmos Club meeting took place after her demotion, Calobrisi argues that the leadership of the legal department "made decisions to favor younger, male attorneys" at the February 26th meeting and that those decisions effectively sealed Calobrisi's fate, which was still a "work in progress" at that time. Pl.'s Supplemental Mem. 11. Calobrisi also attributes her demotion and constructive discharge to "a corporate culture that prevents older,

3

female employees from advancing within the firm." Id. at 8. She alleges that this institutional "glass ceiling" emanated from Booz Allen's D.C. offices. Id.

## II. Standard of Review

When ruling on a motion to dismiss for lack of venue or subject matter jurisdiction, the Court generally must accept as true the plaintiff's well-pled allegations and draw all reasonable inferences in her favor, e.g., McQueen v. Harvey, 567 F. Supp. 2d 184, 186 (D.D.C. 2008), but may consider material outside of the pleadings, e.g., United States v. Smithfield Foods, Inc., 332 F. Supp. 2d 55, 59 (D.D.C. 2004). The Court need not accept as true the allegations in the complaint when "directly contradicted by affidavit." DSMC, Inc. v. Convera Corp., 273 F. Supp. 2d 14, 20 (D.D.C. 2002). A defendant prevails on a motion to dismiss for lack of venue by presenting "specific facts that defeat a plaintiff's assertion of venue." McQueen, 567 F. Supp. at 186 (citing Darby v. Dep't of Energy, 231 F. Supp. 2d 274, 277 (D.D.C. 2002)). The plaintiff bears the burden of establishing that venue is proper. E.g., Williams v. GEICO Corp., 792 F. Supp. 2d 58, 62 (D.D.C. 2011). Additionally, when a defendant brings a motion to dismiss for lack of subject matter jurisdiction, "the plaintiff bears the burden of establishing by a preponderance of the evidence that the Court possesses jurisdiction." Boland v. Fortis Const. Co., 796 F. Supp. 2d 80, 86 (D.D.C. 2011) (quotation marks and brackets omitted) (quoting Hollingsworth v. Duff, 444 F. Supp. 2d 61, 63 (D.D.C. 2006)).

## III. Venue under Title VII

Title VII includes a specific venue provision, which requires that any action under the statute be brought in either: (1) the state in which the unlawful employment practice allegedly occurred; (2) the district in which relevant employment records are located; (3) the district in which the plaintiff would have worked; or (4) if the respondent is not found within any such district, in the district in which the respondent has its principal office. 42 U.S.C. § 2000e-5(f)(3). Both parties

agree that only the first avenue—where the unlawful employment practice occurred—is at issue here, as Calobrisi's employment records are in Virginia, and she would have continued to work at Booz Allen's McLean, Virginia office had she not resigned. To determine where the unlawful employment practice occurred, courts apply a "commonsense appraisal" of events having operative significance. Taylor v. Shinseki, 13-1416, 2014 WL 350261, at *2 (D.D.C. Jan. 31, 2014) (citing James v. Booz–Allen & Hamilton, 227 F. Supp. 2d 16, 20 (D.D.C. 2002)). The inquiry "focuses on the locus of the alleged discrimination." James, 227 F. Supp. 2d at 22. "'[T]he Court must look to the place where the *decisions* and *actions* concerning the employment practices occurred.'" Jones v. Hagel, 956 F. Supp. 2d 284, 288 (D.D.C. 2013) (quoting Hayes v. RCA Serv. Co., 546 F. Supp. 661, 663 (D.D.C. 1982)) (emphasis in original). "'[V]enue cannot lie in the District of Columbia when a substantial part, if not all, of the employment practices challenged in th[e] action took place outside the District even when actions taken in the District may have had an impact on the plaintiff's situation.'" Id. (quoting James, 227 F. Supp. 2d at 20).

  The significant events that resulted in Calobrisi's demotion and alleged constructive discharge all took place in Virginia, where she and the other senior members of the legal department worked. Calobrisi's supervisors swear in affidavits that they decided to demote her at a January 20th meeting in Virginia. Meyers Decl. ¶¶ 9, 11–12; Manya Decl. ¶¶ 5, 7–8; Appleby Decl. ¶¶ 11, 14–15; Osborne Decl. ¶¶ 5, 7–8. The January 26th meeting, in which Calobrisi's supervisors told her she would be demoted, and the April 5th meeting, in which she was allegedly forced to sign a memorandum accepting the demotion, also took place in Virginia. And Calobrisi does not allege that any of her conversations with supervisors and human resources employees regarding the demotion occurred in the District.

  Calobrisi provides no evidence to contest Booz Allen's sworn affidavits and deposition testimony establishing that no discussions regarding her demotion took place in D.C. Retreating

5

from the allegation in her complaint that the decision to demote her was made at an earlier Cosmos Club meeting in January 2011, Calobrisi speculates instead that her supervisors declined to reverse her demotion due to a discriminatory strategy that was outlined at the February meeting. Pl.'s Supplemental Mem. at 25.[1] But this contention is insufficient to meet Calobrisi's burden to demonstrate that the alleged unlawful employment practices—which are the actual demotion and constructive discharge—occurred in D.C. Even assuming for the sake of argument that the Cosmos Club meeting influenced later employment decisions regarding Calobrisi, the locus of the alleged unlawful employment practice remains Virginia because all events that directly bear on Calobrisi's demotion occurred there. At most, then, the Cosmos Club meeting might have encouraged her supervisors to continue down the path they had already chosen. But "a substantial part, if not all, of the employment practices challenged in this action" occurred in Virginia and the Cosmos Club meeting, at best "*may* have had an impact on the plaintiff's situation." Jones, 956 F. Supp. 2d at 288 (internal quotation omitted) (emphasis added); accord James, 227 F. Supp. 2d at 22 (finding that the "locus of the alleged discrimination" was not D.C. because the decision to fire the plaintiff and the act of firing the plaintiff took place in other states).

Calobrisi also argues that her demotion resulted from general discriminatory practices that emanate from Booz Allen's Washington, D.C. offices, which she says have created a "glass ceiling" for older women at the firm. Pl.'s Opp. to Mot. to Dismiss at 7–8. But these pattern and practice allegations are not relevant to venue because, as other courts in this Circuit have previously determined, individual plaintiffs such as Calobrisi cannot bring a pattern or practice claim under Title VII. See Marcus v. Geithner, 813 F. Supp. 2d 11, 20 (D.D.C. 2011) ("myriad rulings from members of this court and elsewhere have unanimously affirmed the proposition that an individual

---

[1] Although Calobrisi continues to maintain that another meeting at the Cosmos Club may have occurred in January, she has put forth no evidence of an earlier meeting.

plaintiff may not bring a standalone 'pattern or practice' claim outside the context of a class action") (collecting cases). Pattern and practice evidence remains relevant to proving that facially legitimate justifications for termination were pretextual. Id. at 20–21. But a pattern and practice of discrimination is not an "unlawful employment decision" with respect to Calobrisi, and thus she cannot obtain venue in D.C. based on these allegations. Additionally, even if creating a discriminatory "glass ceiling" was an unlawful employment decision, these allegations would not shift the locus from Virginia because all of the important events specifically related to Calobrisi's demotion occurred in Virginia.

Because Calobrisi has failed to put forth evidence showing that the decision to demote her occurred in D.C., venue under Title VII does not lie in this Court. The Court therefore will transfer Calobrisi's Title VII claims to the Eastern District of Virginia. See, e.g., Williams v. GEICO Corp., 792 F. Supp. at 64 ("Generally, the interest of justice requires transferring [Title VII] cases to the appropriate judicial district rather than dismissing them.").

### IV. D.C. Human Rights Act

The DCHRA prohibits discrimination by an employer on the basis of sex or age. D.C. Code § 2-1402.11(a)(1). Jurisdiction exists under the DCHRA when the "actual discriminatory . . . decisions by an employer . . . [took] place in the District" or when the employee experienced the effects of the discrimination in the District. Monteilh v. AFSCME, AFL-CIO, 982 A.2d 301, 304 (D.C. 2009). "The DCHRA is not extraterritorial; it does not and cannot secure an end to discrimination in jurisdictions outside of the District of Columbia." Cole v. Boeing Co., 845 F. Supp. 2d 277, 284 (D.D.C. 2012) (citing Monteilh, 982 A.2d at 304). The parties acknowledge that the second basis for jurisdiction under Monteilh—whether the effects of the decision to demote Calobrisi were felt in D.C.—does not apply here because Calobrisi worked in Virginia and resides in Maryland. Compl. ¶ 4.

The plaintiff in Monteilh alleged that his employer transferred him and audited his work in retaliation for his complaints of discrimination. 982 A.2d at 302. The D.C. Court of Appeals held that, if the decision to transfer Monteilh and to audit his work came from the employer's D.C. office, he could bring suit under the DCHRA. Id. at 304. The court concluded, however, that "[i]t would not be enough to establish subject matter jurisdiction under the DCHRA simply to show that the company is headquartered [in D.C.] or has offices here." Id. at 304–305. It therefore remanded the case to D.C. Superior Court to determine if the decisions to transfer and audit occurred in D.C. See id.

As discussed above, Booz Allen has put forth competent evidence showing that the decision to demote Calobrisi occurred in Virginia, and she has provided no evidence to the contrary. Rather, Calobrisi argues that the evidence has not foreclosed the possibility that the decision to demote her occurred in D.C. Specifically, she maintains that the Cosmos Club meeting in February emphasized hiring younger employees, which caused the law department to "hatch[] a plan that rendered untenable the investigation of Ms. Calobrisi's claims of discrimination[.]" Supplemental Mem. at 17–18. She also argues that Booz Allen's institutional "glass ceiling" caused her supervisors to decide to demote her. Id. at 18–22. But, even if true, none of these allegations amount to an "actual discriminatory decision" regarding Calobrisi in D.C. See Monteilh, 982 A.2d at 304. Moreover, Calobrisi's burden to provide evidence in support of jurisdiction cannot be met by arguing that her allegations remain within the realm of possibility. Particularly where the parties have engaged in discovery on jurisdiction and venue, Calobrisi must put forth evidence showing that the decision to demote and constructively discharge her occurred in D.C. Because she has not done so, her claims under the DCHRA must be dismissed.

## V. Transfer of ADEA Claims

Having decided to transfer Calobrisi's Title VII claims due to lack of venue and to dismiss her DCHRA claims, the Court is left to decide whether to transfer her remaining ADEA claims to the Eastern District of Virginia as well. A court may transfer any civil action to any district where the case might have been brought for the convenience of parties and witnesses and in the interests of justice. 28 U.S.C. § 1404(a). Transfer under section 1404(a) is within the sounds discretion of the Court. E.g., Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996). The party seeking transfer bears the burden of establishing that transfer is proper. E.g., Air Line Pilots Ass'n v. E. Air Lines, 672 F. Supp. 525, 526 (D.D.C. 1987). In determining whether permissive transfer under section 1404(a) is appropriate, the Court considers the private interest of the parties and the public interest of the courts. Id. (collecting cases).

Transfer is appropriate here because, as discussed in detail above, "the majority of the acts giving rise to the claims occurred outside of the District." Blackhawk Consulting, LLC v. Fed. Nat'l Mortgage Ass'n, 975 F. Supp. 2d 57, 61 (D.D.C. 2013) (citing Sheldon v. Nat'l R.R. Passenger Corp., 355 F. Supp. 2d 174, 178 (D.D.C. 2005)). Additionally, the public interest would be served by transferring Calobrisi's remaining claims to Virginia because her Title VII claims must be transferred. For this Court to keep her ADEA claims, which arise out of the same series of events, would result in needlessly duplicative proceedings. See, e.g., Gardner v. Mabus, 13-1078, 2014 WL 2788188, at *2 (D.D.C. June 20, 2014) ("'It is in the interest of justice to transfer the entire complaint rather than have it heard in two different venues.'" (quoting In re O'Leska, 00-5339, 2000 WL 1946653, at *1 (D.C. Cir. 2000))). Calobrisi's choice of forum is not given its customary deference because D.C. is not her home forum and has little factual nexus to the case. See Blackhawk Consulting, 975 F. Supp. 2d at 61 (citing Trout Unlimited, 994 F. Supp. at 17).

## VI. Conclusion

For the reasons stated above, the Court will dismiss Calobrisi's claim under the DCHRA (Counts I, III, and V), and transfer all remaining claims to the Eastern District of Virginia. The Court will issue an order consistent with this opinion.

Date: _____

                                               CHRISTOPHER R. COOPER
                                               United States District Judge