# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

| | |
|---|---|
| **CARLA CALOBRISI** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Case No. 1:14-cv-00996-AJT-TRJ** |
| **BOOZ ALLEN HAMILTON INC.,** ) | |
| **Defendant.** ) | |
| ) | |

## PLAINTIFF'S MOTION TO COMPEL DOCUMENTS ASSERTED PRIVILEGED AND MEMORANDUM IN SUPPORT

Plaintiff Carla Calobrisi, by counsel, and pursuant to Rule 37 of the Federal Rules of Civil Procedure, hereby moves this Court for an Order compelling Defendant Booz Allen Hamilton, Inc. ("Booz Allen" or "Defendant") to produce several documents inappropriately withheld as privileged.  Plaintiff's Memorandum in support of this Motion is set forth below.

## CERTIFICATE PURSUANT TO RULE 26(c)

Counsel for Plaintiff hereby certify that counsel have made good faith efforts to resolve the below matters with opposing counsel. Defendant served its privilege log on October 6, 2014. After reviewing it, Plaintiff's counsel highlighted certain documents that did not appear to be privileged and contacted Defendant to request a telephone call to discuss the highlighted (and problematic) documents. (*See* Ex. 1, Plaintiff's highlighted privilege log). Shortly thereafter, the parties had a conference call to discuss the issues, but were unable to resolve them. As such, Plaintiff's counsel requested Defendant's consent to this motion. (Ex. 2, Correia email to Robinson, dated November 5, 2014). The parties engaged in another telephone call on November

6, 2014, in another attempt to resolve the issues with the highlighted documents on the privilege

log, yet the parties were still unable to resolve the issues, and this motion became necessary.

## SUMMARY OF ARGUMENT

Defendant has refused to produce documents that Plaintiff's counsel asserts are

not properly protected by the attorney-client privilege and thus should be produced.[1] Plaintiff is

seeking a narrow set of documents highlighted on Defendant's privilege log, yet Defendant

maintains that all of the documents at issue are properly withheld pursuant to the attorney-client

privilege. Defendant's improper assertion of the attorney-client privilege as it pertains to the

highlighted documents should be overruled, and the non-privileged documents should be

produced. Plaintiff respectfully requests that the Court order Defendant to immediately produce

these highly relevant and discoverable documents, or in the alternative, order Defendant to

produce the non-privileged documents for *in camera* review.

## STATEMENT OF FACTS

The crux of this case is Defendant's discriminatory demotion of Plaintiff Carla Calobrisi.

Plaintiff was a Principal in the Booz Allen Law Department and was the team lead of three

practice areas: Commercial, International Operations, and Global Real Estate. Ms. Calobrisi

negotiated contracts for commercial clients, vendor/supplier contracts for the infrastructure

support of Booz Allen in the US ("commercial"), as well as (1) U.S. government contracts for

work that was to be performed outside the US, (2) international commercial business, and (3)

infrastructure or offices that needed to be opened to do both types of work ("international"), and

---

[1] As of November 7, 2014, Defendant has offered to identify the attorney providing legal advice in the privilege log entries by no later than November 10, 2014. Plaintiff is willing to modify this motion to the extent the identification crystalizes the issues.

real estate.  Ms. Calobrisi set up offices, which included negotiating the leases, handling local employment contracts, opening bank accounts, registering to do business in a foreign country, working with tax and finance on various issues, relocating employees, travel, and international commercial contracts.

In 2008, Booz Allen entered into a non-compete agreement that prevented Booz Allen from engaging in some of the work for which Ms. Calobrisi had been responsible.  The Company immediately began planning for how it would re-enter the commercial and international markets when the non-compete expired in July 2011.  The firm began to plan to open new offices abroad to service international and US commercial clients.

On more than one occasion in and around mid to late 2008 and in the ensuing years covered by the non-compete agreement, Ms. Calobrisi's supervisor, Vice President Bill Meyers, and other members of the firm assured her that when the non-compete clause was lifted in 2011, the commercial part of her practice would expand. In the interim years, Ms. Calobrisi prepared for the year 2011 expansion of her practice. For approximately two and one half years, Ms. Calobrisi reasonably expected her commercial practice and international infrastructure practice to significantly grow in 2011.

In 2010, during Ms. Calobrisi's performance evaluation, the firm recognized that Ms. Calobrisi "took her role to new levels this year, demonstrating her ability to build the institution," that she "projects self-confidence, authority and enthusiasm in her leadership style," that she has "strong subject matter expertise and business acumen" and that her "biggest area of impact this year is highlighted in her thought leadership, strong collaboration and communication style that she exhibited through several initiatives."  In or around December

3

2010, Mr. Meyers told Ms. Calobrisi that more than anyone else in the Law Department it was going to be her "time to shine." Mr. Meyers made this comment because Ms. Calobrisi's practice was about to significantly expand due to the expiration of the non-compete agreement.

Given that Ms. Calobrisi was on the cusp of a significant expansion in her practice, she had worked for the Law Department for over a decade, and she was well recognized for her leadership ability, she reasonably expected the firm would finally assign her junior attorneys to supervise and support her expanded work (as had been provided to younger, male attorneys Messrs. Manya and Meyers). By the end of 2010 and early 2011, Ms. Calobrisi reasonably expected that the coming expansion in her practice and corresponding leadership opportunities would support a promotion to vice president and that the firm would promote her to vice president in the future, as it had done with younger, less experienced, male attorneys Messrs. Meyers and Manya.

The firm, without explanation, took away the majority of her work and redistributed it to two male vice presidents (Messrs. Manya and Meyers) and their associates, all of whom were substantially younger than Ms. Calobrisi. In January 2011, when Ms. Calobrisi she was 55 years of age, the firm then demoted Ms. Calobrisi from Principal back to Senior Associate, despite the fact that she had been a Principal at the firm for eight years and a top performing attorney. When Ms. Calobrisi complained that the demotion was based on her sex and age, the firm told Ms. Calobrisi that if she "can't get over it," she should leave the firm. Instead of reconsidering the demotion, the firm threatened her with termination, insisted she sign a (false) "voluntary" demotion letter, and informed her that she would never get a raise again. Due to these discriminatory and retaliatory career-ending actions, Ms. Calobrisi had no choice but to resign.

As is Booz Allen's general practice, the firm immediately replaced Ms. Calobrisi with a younger, male attorney.

## ARGUMENT

Defendant has improperly asserted the attorney-client privilege as to numerous documents that are discoverable and non-privileged. Defendant maintains that the documents at issue are properly withheld pursuant to the attorney-client privilege. This Circuit adheres to the "Classic View" of the attorney-client privilege. The elements of the attorney-client privilege under the Classic View are:

> (1) The asserted holder of the privilege is or sought to become a client;
> (2) the person to whom the communication was made must be a lawyer or his subordinate, and acting as or on behalf of a lawyer;
> (3) the communication must relate to a fact of which the attorney was informed by his client in confidence and without the presence of "strangers;"
> (4) for the primary purpose of securing legal advice or services;
> (5) not for the purpose of committing a crime or tort; and
> (6) the privilege has not been waived by the client.

*United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982). Under this view, "the function of the privilege is limited to the protection of the confidentiality of a client's confidences shared with counsel. Thus, a communication between the client and counsel that reflects counsel's advice is privileged only if it would reveal a confidential communication from the client to counsel made for the purpose of obtaining legal advice." *See* Navigating Implied Waiver of the Attorney-Client Privilege, 67 N.Y.U. Ann. Surv. Am. L. 693, 699.

The documents at issue here are discoverable and not privileged for two reasons. First, many of the documents at issue concern business decisions and the law is clear that any advice

5

sought for business, and not primarily legal, purposes is not privileged. *See Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398 (D. Md. 2005). Second, even if there is an attorney-client privilege that attaches to some of the documents at issue, which there is not, Defendant waived any such privilege through its assertion of a good faith affirmative defense. *See* Ex. 3, Defendant's Answer at pg. 19, ¶ 6; *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982).

## I.   <u>Business Advice from Booz Allen's Attorneys is Not Privileged</u>

Many of Defendant's "privileged" documents appear to contain nothing more than general business decisions and conversations concerning business personnel employment transitions, business department reorganization, and realignment of business leadership. (Ex. 1, Plaintiff's highlighted privilege log).  "The attorney-client privilege 'applies only to communications made to an attorney in his capacity as legal advisor.'" *Neuberger*, 230 F.R.D. at 411 (citing *Marten v. Yellow Freight System, Inc.*, 1998 U.S. Dist. LEXIS 268 (D. Kan. Jan. 6, 1998)). "Where business and legal advice are intertwined, the legal advice must predominate for the communication to be protected." *Id.* (citing *Coleman v. ABC*, 106 F.R.D. 201, 206 (D.D.C. 1985); *ABB Kent-Taylor v. Stallings and Co., Inc.*, 172 F.R.D. 53, 55 (W.D.N.Y. 1996) ("often intertwined with legal advice as to substantive issues is counsel's strategic assessment of alternative choices of action available to the client.")). "[W]hen the legal advice is merely incidental to business advice, the privilege does not apply. Relatedly, communications by a corporation with its attorney, who at the time is acting solely in his capacity as a business advisor, would not be privileged." *Neuberger*, 230 F.R.D. at 411 (citing *Great Plains Mut. Ins. Co. v. Mutual Reinsurance Bureau*, 150 F.R.D. 193, 197 (D. Kan.1993)) (internal citations and

quotations omitted); *see also Scott & Stringfellow, LLC v. AIG Commer. Equip. Fin., Inc*., 2011 U.S. Dist. LEXIS 51028 (E.D. Va. May 12, 2011) (holding that the attorney-client privilege did not apply where general counsel was a recipient of the email chain but the communications did not *explicitly* seek legal advice, opinions, or oversight, and where the attorney's response was limited to clarifying a business issue) (emphasis added). In short, "[c]ommunications seeking business, rather than legal, advice are not protected." *Sky Angel U.S., LLC v. Discovery Communs., LLC*, 2014 U.S. Dist. LEXIS 88569 (D. Md. June 30, 2014). Moreover, "the privilege protects confidential communications, but not the underlying factual information." *Id*.

The nature of the documents at issue here appear to pertain directly to business advice and business decisions, despite Defendant's assertion to the contrary. Indeed, Plaintiff's claims at their core center around the "realignment" of the Law Department, the assignments made within the Law Department, and the circumstances around the "rescoping" of Ms. Calobrisi's position with the Law Department. Any legal advice would be merely incidental to conversations about "transition to commercial work," "international practice," and "realignment of leadership" – all of which were set forth as justification for the assertion of privilege in Defendant's privilege log. Moreover, the documents at issue here do not contain any privileged trade secrets or client confidences since those are clearly denoted in other entries in Defendant's privilege log. (*See e.g.*, Ex. 1, pg. 8, entry BAHCAL030002817-2831). The documents at issue in this motion appear to contain conversations among attorneys and the business concerning customary business decisions such as reorganization of business departments and business personnel issues. Defendant's attempt to hide behind the privilege in an effort to evade its discovery

responsibilities flies in the face of the black letter law in this Circuit. "Since the privilege impedes the full and free discovery of the truth, and is in derogation of the public's right to every man's evidence, it is not favored by federal courts. Accordingly the privilege is to be strictly confined within the narrowest possible limits consistent with the logic of its principle." *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1984) (internal citations and quotations omitted).

      Moreover, in-house counsel are often subjected to heightened scrutiny.

> The fact that in-house counsel often plays multiple roles in the corporation has caused many courts to apply heightened scrutiny in determining whether the elements of the attorney-client privilege have been established. While courts state that they do not intend to weaken the privilege, they are mindful that corporate clients could attempt to hide mountains of otherwise discoverable information behind a veil of secrecy by using in-house legal departments as conduits of otherwise unprivileged information. As a result, many courts impose a higher burden on in-house counsel to clearly demonstrate that advice was given in a legal capacity. David M. Greenwald et al., Testimonial Privileges § 1:44 (3d ed. 2005). *See also*, Rice, Attorney-Client Privilege in the United States 7.29, P 6.4 (2d ed. 1999) and cases cited therein, (Courts have held that communications to and from in-house counsel can be sheltered only upon a clear showing that [in house counsel] gave [advice] in a professional legal capacity).

*Neuberger*, 230 F.R.D. at 411, n.20. In *Neuberger*, the court found that the in-house counsel acted in various officer and director capacities (like many of the attorneys listed on Defendant's privilege log, *see e.g.* Ex. 4, Booz Allen SEC Form 3, Appleby; Ex. 5, Appleby Tr. at 6; Ex. 6, Osborne Tr. at 6) and had improperly asserted the attorney-client privilege over documents that clearly pertained to business matters. *Id.* at 411-416. Plaintiff urges this Court to apply this heightened standard of scrutiny to Defendant's attorneys.

Like *Neuberger*, Defendant is clearly attempting to use the attorney-client privilege as both a sword and shield by cherry-picking which documents are privileged and which are not privileged, according to what is most beneficial to Booz Allen. Many of the highlighted entries in Defendant's privilege log contain emails involving Mr. Meyers, who was Ms. Calobrisi's direct supervisor. (*See* Ex. 7, Def.'s Resp. and Obj. to Pl.'s Interrogatories at ¶¶ 1(d), 3, 11). In fact, Mr. Meyers was responsible for making the bulk of decisions concerning Ms. Calobrisi's career and demotion, which is at the heart of this case. (*See id.* "There were a myriad of other 'employment decisions' made concerning Plaintiff . . . and those decision [sic] were generally made by Mr. Meyers, who was Plaintiff's supervisor during that period of time."). Mr. Meyers also appeared at the January 31, 2014, depositions of both Messrs. Appleby and Osborne as the Booz Allen corporate representative.[2] (*See* Ex. 5, Appleby Tr. at 6; Ex. 6, Osborne Tr. at 6). Defendants cannot now claim that the myriad emails in its privilege log involving Mr. Meyers are privileged and protected from disclosure when Defendant itself has held him out in a corporate (and not in-house) capacity. This is precisely the action that the defendant in *Neuberger* took and which the court held was not enough to assert the attorney-client privilege. *See Neuberger*, 230 F.R.D. at 411, n.20 ("corporate clients [can] attempt to hide mountains of otherwise discoverable information behind a veil of secrecy by using in-house legal departments as conduits of otherwise unprivileged information"). Booz Allen is attempting to hide its discriminatory and retaliatory actions against Ms. Calobrisi by concealing highly relevant information as "privileged." Plaintiff urges this Court to apply this heightened standard to

---

[2] In fact, it was Ms. Katherine Murphy who appeared as in-house counsel at both Messrs. Appleby and Osbourne's depositions, clearly indicating that Mr. Meyers was acting separate and apart from any "in-house" capacity. (*See* Ex. 5, Appleby Tr. at 6; Ex. 6, Osbourne Tr. at 6).

Defendant and to order Booz Allen to produce the highlighted documents, or in the alternative, to submit the documents for *in camera* review.

**II.      If the Documents are Privileged, Which they are Not, Defendant has Nonetheless Waived the Privilege**

Defendant asserts the affirmative defense that it acted in "good faith" when it demoted Ms. Calobrisi. (*See* Defendant's Answer at pg. 19, ¶ 6). A party's assertion of a good faith defense waives the attorney-client privilege it had regarding its good faith compliance with the law since the material "goes to the heart of the defense." *Twigg*, 2007 U.S. Dist. LEXIS 14669 (N.D. W. Va. Feb. 28, 2007). "Whenever a privileged communication is made relevant and material by the assertion of a claim or defense, the privilege is waived." Navigating Implied Waiver of the Attorney-Client Privilege, 67 N.Y.U. Ann. Surv. Am. L. 693, 726. This waiver occurs when a client asserts a claim or defense that requires the use of the privileged materials for proof. *Id.; see also Peterson v. Fairfax Hosp. Sys.,* 37 Va. Cir. 535, 541 (Va. Cir. Ct. 1995) (finding that implied waiver of the attorney-client privilege was warranted where plaintiff put the privileged material at issue through its claims and defenses). "Implied waiver nullifies a privilege when disclosure of a privileged communication has vitiated confidentiality." *In re Martin Marietta Corp.,* 856 F.2d 619, 622 (4th Cir. 1988). "Selective disclosure for tactical purposes waives the [attorney-client] privilege." *Jones*, 696 F.2d at 1072. Courts do not approve of such tactics. *See Twigg v. Pilgrim's Pride Corp.*, 2007 U.S. Dist. LEXIS 14669 (N.D. W. Va. Feb. 28, 2007) (citing *Charlotte Motor Speedway, Inc. v. Int'l Ins. Co.*, 125 F.R.D. 127, 129-31 (M.D.N.C. 1989); *Donovan v. Fitzsimmons*, 90 F.R.D. 583, 588 (N.D. Ill. 1981)) ("where a party

intends to use an 'attorney's opinions as a sword or shield to affect the factfinding process[,]' those opinions are not covered by the [attorney-client privilege]").

Here, Defendant simply cannot defend itself based on good faith, and then assert privilege over every document and communication that could possibly demonstrate whether it actually did act in good faith when it demoted Ms. Calobrisi. Plaintiff must be able to rebut Defendant's good faith affirmative defense, and in order to do so, it must have access to the documents at issue here. Documents and conversations concerning Ms. Calobrisi's demotion, as well as the reorganization of her practice groups, are certain to demonstrate whether Defendant acted in good faith and because Defendant put good faith at issue here, Plaintiff is entitled to the documents on the privilege log that pertain to Booz Allen's good faith defense.

Furthermore, any "voluntary production" of documents in the "ordinary course of business" waives any attorney-client privilege with respect to those documents. *See Jonathan Corp. v. Prime Computer, Inc*., 114 F.R.D. 693, 700 (E.D. Va. 1987). Some of the entries in Defendant's privilege log were from, to, or directly involved Ms. Calobrisi. These documents and emails were most certainly disclosed to Ms. Calobrisi (indeed, she even authored some of them) and as such, Defendant has waived any attorney-client privilege it claims as to the documents and emails that were disclosed to Ms. Calobrisi in the regular course of business. In fact, "disclosure is required if the undisclosed information concerns the same subject matter as the disclosed information and they ought in fairness to be considered together." Fed. R. Evid. 502(a)(2)-(3). The Fourth Circuit supports this approach. *See U.S. v. Pollard (In re Martin Marietta Corp.)*, 856 F.2d 619, 623-24 (4th Cir. 1988) "most courts continue to state the rule of implied waiver in absolute form - any disclosure of a confidential communication outside a

privileged relationship will waive the privilege as to all information related to the same subject matter."). Because Booz Allen has already disclosed certain emails and information to Ms. Calobrisi in the ordinary course of her employment, it should produce all other emails and information concerning the same subject matter.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court order Defendant to immediately produce these highly relevant and discoverable documents, or in the alternative, order Defendant to produce the non-privileged documents for *in camera* review.

Respectfully Submitted,

  /s/ John R. Ates
John R. Ates, Esquire (VSB # 71697)
Ates Law Firm, P.C.
1800 Diagonal Road
Suite 600
Alexandria, Virginia 22314
(703) 647-7501 (telephone)
(703) 229-6430 (facsimile)
j.ates@ateslaw.com

  /s/ Linda M. Correia
Linda M. Correia (pro hac vice)
Correia & Puth, PLLC
1775 K Street, NW, Suite 600
Washington, D.C.  20006
(202) 602-6500 (telephone)
(202) 602-6501 (facsimile)
lcorreia@correiaputh.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 7, 2014, I served the foregoing Motion to Compel Documents to Defendant by e-mail via CM/ECF to:

Stephen W. Robinson
Sarah A. Belger
Melissa L. Taylormoore
McGuire Woods LLP
1750 Tysons Blvd., Suite 1800
Tysons Corner, VA 22102

Attorneys for Defendant

       /s/ John R. Ates
John R. Ates, Esquire (VSB # 71697)
Ates Law Firm, P.C.
1800 Diagonal Road
Suite 600
Alexandria, Virginia 22314
(703) 647-7501 (telephone)
(703) 229-6430 (facsimile)
j.ates@ateslaw.com

13