**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| CARLA CALOBRISI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:14-cv-00996 (AJT/MSN) |
| | ) |
| BOOZ ALLEN HAMILTON INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION *IN LIMINE*

Defendant Booz Allen Hamilton Inc. ("Booz Allen" or "the Firm"), by counsel, and pursuant to Rule 26 of the Federal Rules of Civil Procedure and Local Rule 7(F), states as follows in support of its Motion *In Limine*.[1]

## I.      INTRODUCTION

The sole issues that will be before any jury who hears Plaintiff's claim are whether: (1) Booz Allen discriminated against Plaintiff because of her gender or age when Mr. Appleby, in his role as the Firm's General Counsel, decided in January 2011 to have Plaintiff head the Firm's Real Estate practice group, and have two other women, Debra Storms and Karen Tinsky, assume leadership of the Firm's Commercial and International practice areas; and (2) whether Booz Allen retaliated against Plaintiff by presenting her with a memorandum memorializing the

---

[1]      As fully stated in Booz Allen's Motion for Summary Judgment, which the Court has taken under advisement, the undisputed material facts warrant entry of judgment in favor of the Defendant on all of Plaintiff's claims.   Booz Allen submits this Motion *in Limine* without prejudice to the positions and arguments advanced in its Motion for Summary Judgment and to comply with the Court's Scheduling Order.   The arguments advanced below assume, for the purpose of this Motion only, that Plaintiff's claims will be presented to a jury.

January 2011 decision to change her position from a Principal to a Senior Associate which resulted in her alleged constructive discharge.

As set forth below, there are several categories of evidence that Plaintiff is expected to proffer at trial that are irrelevant to these issues as prescribed by Federal Rule of Evidence 401 ("Rule 401") and, moreover, if allowed at trial, will only serve to unfairly prejudice Defendant, mislead the jury as to what issue is actually before them and result in lengthy mini-trials regarding personnel decisions that have <u>no nexus</u> to the Law Department's restructuring in January 2011, which would be inconsistent with Federal Rule of Evidence 403 ("Rule 403"). Accordingly, Booz Allen moves the Court to preclude Plaintiff from presenting any evidence, argument or testimony at trial regarding: (1) the performance and work history of William Meyers and Douglas Manya; (2) the "me too" witnesses Plaintiff had proffered who have no nexus to Plaintiff or her claims; and (3) her claims of front and back pay.

## II.    ARGUMENT

### A.    Standard of Review

Only relevant evidence is admissible at trial.  Rule 401 states that evidence is "relevant" if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Accordingly, what constitutes relevant evidence depends on the specific facts of the case, coupled with the claims and defenses at issue.  Rule 403 provides that the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  A motion *in limine* allows the trial court to rule in advance of trial on the admissibility and relevance of certain

forecasted evidence.  Luce v. United States, 469 U.S. 38, 40 n.2 (1984).  For the reasons articulated below, Plaintiff must be precluded from introducing evidence pertaining to the following categories at trial since they fail to satisfy the requirements of both Rules 401 and 403.

> **B.      Plaintiff Cannot Present Testimony at Trial Regarding Mr. Meyers' or Mr. Manya's Work Performance or History.**

Based upon Plaintiff's Complaint and her Opposition to Defendant's Motion for Summary Judgment, Plaintiff intends to offer evidence at trial regarding the work history and performance of William Meyers and Douglas Manya, both of whom are Deputy General Counsels and Vice Presidents in the Firm's Law Department.  As  explained below, any evidence pertaining to the work performance or employment history of Mr. Meyers or Mr. Manya is not only irrelevant to Plaintiff's claims of discrimination and retaliation, since neither is a similarly situated comparator, but also is time barred.

The Fourth Circuit requires plaintiffs to demonstrate that they were treated differently than a similarly situated employee as part of their prima facie case.  Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012) (holding that "[a]bsent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class").[2] Virginia federal courts have consistently held that in order for an individual to be considered "similarly situated" the individual must be similar to plaintiff in all relevant respects. Haywood v. Locke, 387 Fed. App'x. 355, 359 (4th Cir. 2010), cert. denied, 131 S. Ct. 1491 (2011); see also Kelley v. UPS, Inc., 528 Fed. App'x. 285, 286 (4th Cir. 2013); Perrin v. Fennell,

---

[2]      Cf. Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 545 (4th Cir. 2003), cert. denied, 540 U.S. 1106 (2004) (holding that in some contexts, such as a failure to promote case, the requirement of a similarly situated comparator is not always required).

No. 1:10-cv-810, 2011 U.S. Dist. LEXIS 21730, at *24-25 (E.D. Va. March 2, 2011).  In order to be "similarly situated," comparators must have had the "same supervisor" as Plaintiff, have been "subject to the same standards" as Plaintiff and have "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  Haywood, 387 Fed. App'x. at 359 (internal quotations and citations omitted).  Therefore, based upon this well-settled principle of law, only those Law Department attorneys who were considered for the practice positions overseeing the real estate, commercial or international practice areas – Debra Storms and Karen Tinsky – could conceivably constitute similarly situated comparators.

Mr. Meyers and Mr. Manya were Vice Presidents in 2011 (the year in which the alleged adverse action occurred), and were not Principals like Plaintiff.  Thus, they were subject to different performance requirements and benchmarks.   Mr. Meyers was Plaintiff's direct supervisor; Mr. Manya was a level above her.  Furthermore, Mr. Meyers and Mr. Manya were not considered by Mr. Appleby (or Mr. Osborne) when restructuring the Law Department for the Firm's reentry into the Commercial and International markets generally, or determining who should lead the Commercial and International practice group specifically.  (See Def.'s Statement of Undisputed Facts, ¶¶ 5-6 (Dkt. No. 256).)

Accordingly, neither Mr. Manya nor Mr. Meyers is similarly situated to Plaintiff, and any testimony or evidence about their work history or performance contravenes Rules 401 and 403.  See Watt v. Mabus, No. 1:12-cv-128, 2014 U.S. Dist. LEXIS 78215, at *16 (E.D. Va. June 4, 2014) (finding that because of their varying roles, supervisors and subordinates are not similarly situated employees); Austen v. HCA Health Servs. of VA, Inc., 5 Fed. App'x. 253, 254 (4th Cir. 2001) (same).

Additionally, the specific testimony and documentary evidence that Plaintiff will proffer at trial regarding Messrs. Meyers and Manya pertain solely to events plainly barred by the 300-day statute of limitations running from the filing of Plaintiff's Charge of Discrimination on December 13, 2011. (See Pl.'s Statement of Material Facts ¶ 7 (Dkt. No. 261) (referring to Mr. Manya's 2006 promotion to Principal and Mr. Meyers' promotion to Principal in 2002 and to Vice President in 2009).) Plaintiff cannot rely upon these, or other, time-barred facts at trial to substantiate her claims of discrimination or retaliation. McCullough v. Branch Banking & Trust Co., 35 F.3d 127, 131 (4th Cir. 1994), cert. denied, 513 U.S. 1151 (1995).  Accordingly, Plaintiff should be precluded from presenting any testimony or documentary evidence at trial regarding the performance or employment history of Messrs. Meyers and Manya, including Plaintiff's proposed trial exhibit Nos. 111, 112 and 113.

> ### C.   Plaintiff Cannot Proffer "Me Too" Witnesses at Trial Under Sprint v. Mendelsohn Who Have No Nexus to Her Claims.

Plaintiff's Opposition to Booz Allen's Motion for Summary Judgment identified seven women whom she believes should be able to testify as so-called "me too" witnesses in hopes of establishing that Booz Allen's stated legitimate nondiscriminatory reasons for Mr. Appleby's decision is a pretext for discrimination and retaliation.  As set forth below, none of the women Plaintiff has identified have relevant or admissible testimony and Plaintiff should be precluded from presenting such evidence at trial.

It is axiomatic that any evidence from a non-party witness (so called "me too" testimony) must satisfy the standards of Rules 401, 402 and 403.  Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 387-88 (2008); see also Gilyard v. Northlake Foods, Inc., 367 F. Supp. 2d 1008, 1016 (E.D. Va. 2005).  As the Tenth Circuit opined on remand in Mendelsohn:

A plaintiff must demonstrate a nexus between the allegedly discriminatory statements and the defendant's decision to terminate her. <u>Anecdotal evidence of discrimination should only be admitted if the prior incidences of alleged discrimination can somehow be tied to the employment actions disputed in the case at hand.</u>

<u>Mendelsohn v. Sprint/United Mgmt. Co.</u>, 402 Fed. App'x. 337, 340 (10th Cir. 2010) (emphasis added). Thus, what is relevant and what Plaintiff must ultimately prove to prevail on her claims is "that <u>her</u> supervisors intentionally discriminated against her." <u>Id.</u> at 341 (emphasis in original). As outlined below, none of the "me too" women Plaintiff advances in her Opposition satisfy this standard.

      1.    **<u>Joan Hyde</u>**.   Ms. Hyde, whose last date of employment with Booz Allen was September 1, 2011, was not an attorney and did not work in the Law Department.  In addition, unlike Plaintiff, she was a Vice President in the Firm's Corporate Acquisitions Team. Plaintiff has produced no evidence showing that Mr. Appleby evaluated her, or that anyone in the Law Department was responsible for personnel decisions pertaining to her employment. Similarly, Plaintiff has produced no evidence showing that Ms. Hyde was considered for the practice lead positions for the Real Estate, Commercial or International practice areas since she was not a member of the Law Department.  These facts alone preclude Ms. Hyde from testifying as a "me too" witness as any testimony she offers has no connection to the Law Department's January 2011 restructuring and will, therefore, not tend to make more or less probable the fact before the jury; namely, whether Booz Allen's stated reasons for its decision to restructure the Law Department and to have Plaintiff lead the Real Estate practice group were a pretext for discrimination.  <u>See e.g.</u>, <u>Jackson v. UPS</u>, No. 13-15168, 2014 U.S. App. LEXIS 22092, at *11-12 (11th Cir. Nov. 20, 2014) (affirming trial court's holding that claims involving a different supervisor were irrelevant to plaintiff's claims); <u>Megivern v. Glacier Hills Inc.</u>, No. 11-10026,

2012 U.S. Dist. LEXIS 20749, at *59-60 (E.D. Mich. Feb. 17, 2012), aff'd, 519 Fed. App'x 385 (6th Cir. 2013) (finding personnel decisions of employees in different departments with different supervisors irrelevant to plaintiff's discrimination claims).

Moreover, even assuming decisions pertaining to Ms. Hyde had some nexus to Plaintiff's claims, the substance of Ms. Hyde's expected testimony does not evidence a pattern of discrimination from which a reasonable juror could conclude Mr. Appleby's decision was pretextual.   Ms. Hyde testified that she was never demoted from her position as Vice President and testified that she did not have any decrease in compensation after Carl Salzano – a Partner who has no connection to the Law Department – shifted some of her managerial responsibilities to another employee.  (Ex. 1, J. Hyde Dep. Tr. 11:9-12:6.)  Similarly, Ms. Hyde has no facts that any decisions related to her were made because of her gender or her age.[3]  Lastly, Ms. Hyde also testified she left Booz Allen voluntarily, some 14 months after her work was allegedly taken away from her.  (Id. 11:16-19, 40:17-19.)  Importantly, Plaintiff's quote in her Opposition to Booz Allen's Motion for Summary Judgment representing that Ms. Hyde had testified that women "couldn't be successful at Booz Allen" is not from Ms. Hyde's testimony, but an inaccurate quote from Plaintiff's counsel's leading question on redirect and an unfortunate attempt to misrepresent the Record.  (Id. 70:12-13.)

---

[3]      To the extent Plaintiff wishes to have Ms. Hyde testify about the other women she mentioned in her deposition as being treated unfairly – Molly Finn, Catherine Nelson and Robin Shaffert – such evidence is clearly inadmissible hearsay and also barred under King v. Rumsfeld as Ms. Hyde admitted at her deposition that she does not have any personal knowledge regarding the personnel decisions of these individuals and was not their supervisor.  See 328 F.3d 145, 149 (4th Cir. 2003), cert. denied, 540 U.S. 1073 (2003) ("It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.") (quoting Evans v. Tech. Applications & Serv. Co., 80 F.3d 954, 960-61 (4th Cir. 1996); see also Ex. 1, J. Hyde Dep. Tr. 80:15-19.

2.    **Elizabeth Ewart**.  Ms. Ewart, who voluntarily retired in July 2014, was not an attorney and did not work in the Law Department.  Unlike Plaintiff, she was a Senior Associate in the Firm's Corporate Real Estate Group.   Plaintiff has produced no evidence showing that Mr. Appleby evaluated her, or that anyone in the Law Department was responsible for personnel decisions pertaining to her employment.  Similarly, Plaintiff has produced no evidence showing that she was considered for the practice lead positions for the Real Estate, Commercial or International practice areas because she was not ever a member of the Law Department.  These facts alone preclude Ms. Ewart from testifying as a "me too" witness as any testimony she offers will have no relevance to Plaintiff's employment or the Law Department's January 2011 restructuring and will, therefore, not tend to show that Mr. Appleby's decision was a pretext for discrimination.

Even assuming Ms. Ewart could provide testimony that tended to make Plaintiff's pretext claims more probable – which she does not – the substance of her testimony does not have any relevance to Plaintiff's pretext claims.   One, Ms. Ewart testified she had no facts that any decisions pertaining to her employment were made because of her gender and specifically testified that she did not feel any decisions were based on her age.  (Ex. 2, E. Ewart Dep. Tr. 58:18-21.)  Two, Ms. Ewart also testified that neither she nor any other women she testified about (Chimisa Walker, Sheryl Jones, Eileen Kabay or Velma Booth) [4] ever applied for or sought a promotion to a Director position; and she testified that all of the Director positions she

---

[4]     Just as Ms. Hyde cannot testify about the personnel decisions of female partners, Ms. Ewart cannot testify as to the personnel decisions of Ms. Walker, Ms. Jones, Ms. Kabay or Ms. Booth as such testimony is clearly inadmissible.  Ms. Ewart testified she had no knowledge that any of these women applied for promotions and in fact testified that the Director positions were not filled because the positions were eliminated.  (Ex. 2, E. Ewart Dep. Tr. 61:13-62:6, 63:6-64:3.)  See Rumsfeld, 328 F.3d at 149.  Moreover, Ms. Ewart did not supervise any of these employees.  (Ex. 2, Ewart Dep. Tr.  97:2-10).

referenced were never back filled.  (Id. 61:13-62:6, 63:6-64:3.)  Accordingly there are no facts in

the Record from Ms. Ewart showing that the decision concerning Plaintiff was discriminatory –

the only relevant inquiry before the jury and, as such, the only testimony that Ms. Ewart would

potentially have not only fails under Rule 401, but also Rule 403 as it would do nothing more

than cause undue delay, unfair prejudice to Booz Allen and confuse the issues actually before the

jury.

      3.    **Molly Finn**.  Ms. Finn, who left Booz Allen nearly a year before Plaintiff

voluntarily resigned, was not an attorney and did not work in the Law Department.   Unlike

Plaintiff, she was a Partner (several levels above Plaintiff in the Firm's corporate structure) who

led the Firm's Environment, Transportation and Energy Group.   Plaintiff has produced no

evidence showing that Ms. Finn reported to Mr. Appleby or that she had any substantive

interactions with Plaintiff.   In fact, Ms. Finn testified that she stopped working with Plaintiff

after she was promoted to Partner – or approximately ten years before the operative events at

issue in this case.  (Ex. 3, M. Finn Dep. Tr. 80:17-81:16.)  Similarly, Plaintiff has produced no

evidence showing that Ms. Finn was considered for the practice lead positions for Real Estate,

Commercial or International practice areas because she was not a member of the Law

Department.  These facts alone preclude Ms. Finn from testifying as a "me too" witness as any

testimony she offers will have no connection to Plaintiff's employment or the Law Department's

January 2011 restructuring and will, therefore, not tend to show that Mr. Appleby's decision was

a pretext for discrimination.

As with the other proffered witnesses above, Ms. Finn's testimony will not assist the jury

in determining whether the Firm's Law Department had a practice of discriminating against

older women.   Ms. Finn has never made an age discrimination claim.   Moreover, given Ms.

Finn's admission at deposition that she has no personal knowledge regarding Plaintiff's employment in the ten years preceding Mr. Appley's January 2011 decision, any testimony Ms. Finn has pertaining to Plaintiff is either too attenuated to the time period in question to be relevant or inadmissible opinion testimony.

Finally, Plaintiff claims that Ms. Finn has personal knowledge about the Leadership Team's decisions related to the hiring and firing of Partners.  (See Pl.'s Supp. Br. Concerning Def.'s Attach. 1, 6. (Dkt. No. 276).)  This testimony is irrelevant as defined by Rule 401 and fails under Rule 403 because: (1) Ms. Finn was not a member of the Leadership Team and, as such, she cannot have any personal knowledge regarding its decisions; (2) the Leadership Team was not the decisionmaker in the instant case; (3) the decisions with respect to Partners involve completely different performance standards and business considerations, rendering such testimony irrelevant to the claims at issue; and (4) the majority of Ms. Finn's expected testimony – including that pertaining to Joyce Doria and the Firm's election of its President for the government line of business (referred to as the WTB) occurred in 2001 – ten years before the operative events in the instant case.  (Ex. 3, M. Finn Dep. Tr. 14:16-16:22; 106:8-12, 113:21-114:16.)  All of Ms. Finn's opinion, speculation and hearsay testimony regarding what may or may not have happened to other women is inadmissible under Rules 401 and 403 and must be precluded.

4.    **Catherine Nelson**.  Ms. Nelson who, like Ms. Finn, was a Partner with Booz Allen, left Booz Allen as a part of a reduction in force of Partners in January, 2012, a year after the operative events in the case at bar.  This reduction resulted in the elimination of twenty Partner positions, fifteen of which were held by men.   Ms. Nelson was not an attorney and did not work in the Law Department, but instead worked in the Firm's Economic Business Analysis

Group.  Plaintiff has produced no evidence showing that Ms. Nelson reported to Mr. Appleby or that she had any substantive interactions with Plaintiff.  Indeed, the partnership reduction that led to Ms. Nelson exiting the Firm occurred <u>after</u> Mr. Appleby had retired from the Firm and, as such, he could not have had any role in Ms. Nelson's inclusion in that cost saving measure.  Moreover, Plaintiff has produced no evidence showing that Ms. Nelson was considered for the practice lead positions for the Real Estate, Commercial or International practice areas because she was not a member of the Law Department.  (Ex. 4, C. Nelson Dep. Tr. 32:1-33:13; 34:22-35:2, 42:11-43:22; 44:16-47:20.)  Plaintiff testified she did not even know Ms. Nelson. (Ex. 5, Pl.'s Dep. Tr. 305:13-306:10.)  These facts  preclude Ms. Nelson from testifying as a "me too" witness as any testimony she offers will have no relevance to Plaintiff's employment or the Law Department's January 2011 restructuring and will, therefore, not tend to show that Mr. Appleby's decision was a pretext for discrimination.

     **5.**       <u>**Diane Merolla**</u>.  Ms. Merolla, who voluntarily left the Law Department in July 2010 to work in another department within Booz Allen, was not an attorney.  Ms. Merolla was an administrative assistant who worked for the majority of her tenure in the Firm's New York office.  Given her role as an administrative assistant, Ms. Merolla was unquestionably subject to different performance requirements than Plaintiff, and Plaintiff has produced no evidence showing that Ms. Merolla was considered for or involved in any way with the January 2011 restructuring of the Law Department.  (Ex. 6, D. Merolla Dep. Tr. 43:9-45:7.) These facts preclude Ms. Merolla from testifying as a "me too" witness as any testimony she offers will have no nexus to Plaintiff's employment or the Law Department's January 2011 restructuring and will, therefore, not tend to show that Mr. Appleby's decision was a pretext for discrimination.

     Furthermore,  even  assuming  Ms.  Merolla's  background  satisfied  the  tenants  of

Mendelsohn, the substance of her testimony fails under Rule 403 as any probative value is substantially outweighed by the confusion it would cause the jury and the undue delay it would create as Booz Allen would have to proffer additional witnesses regarding Ms. Merolla's work history and performance.   Contrary to Plaintiff's representations (without any citation to the Record), Ms. Merolla was not forced to retire from Booz Allen.   Ms. Merolla was not only provided with the opportunity to find other employment outside of the Law Department (id. 22:21-24:18), but when she told Mr. Appleby she could not retire and needed to continue working, he offered her hours so she could continue to work in the Law Department. (Id. 28:6-15.)  Ms. Merolla did not continue in the Law Department, despite this offer, and transitioned to a new position and continued to work for Booz Allen for another two and a half years.  (Id. 43:5-45:4.)   Additionally, the person hired to perform the expanded duties of the role Ms. Merolla used to perform was another female, who is also over the age of 40.  (Id. 32:21-33:6.)   This is directly contrary to any allegation that Booz Allen has a pattern and practice of discriminating against older women.   Accordingly, any testimony from Ms. Merolla must be precluded under Rules 401 and 403.

      **6.**    **Deborah Sherman**.   Ms. Sherman, who was a Senior Associate in the Law Department, voluntarily left the Company as a part of the spin-off of the Firm's commercial and international work to Booz & Company in July 2008 – two years before any of the operative events in this case.   The Record is clear, despite Plaintiff's misrepresentations of it, that Ms. Sherman went with Booz & Company not because she "had no choice"  (Pl.'s Opp'n to Summ. J., 25 (Dkt. No. 261)) but because she performed only commercial work, and all the commercial work went to Booz & Company.  (Ex. 7, D. Sherman Dep. Tr. 21:14-22:10 (explaining that because her position with Booz Allen focused entirely on commercial work out of New York,

when the commercial side spun off, she logically went to Booz & Company to continue performing the work she focused on instead of transitioning to government work).)  Plaintiff's quotation from Ms. Sherman's deposition is another misrepresentation of the Record, as Ms. Sherman never stated that she "had no choice" but to go to Booz & Company; and importantly, that phrase does not appear anywhere in Ms. Sherman's deposition.

Further, the Record reflects that Mr. Krumpholz – the male attorney Plaintiff wants to identify at trial as having been promoted over Ms. Sherman – was promoted <u>after</u> the Booz & Company split and while Mr. Krumpholz worked for Booz & Company, not while he or Ms. Sherman worked for Booz Allen.  (<u>Id.</u> 37:15-21.)  Ms. Sherman testified that she did not know about Mr. Krumpholz's experience level but that she deemed him equally as competent as her. (<u>Id.</u> 33:17-35:3.)  Plaintiff's attempt to use the circumstances of Ms. Sherman's departure from Booz Allen to support her gender and age claims is disingenuous at best, and Plaintiff must be precluded from calling her at trial as it would clearly do nothing more that confuse the jury and cause yet another mini-trial unrelated to Plaintiff's claims.

**7.** <u>**Robin Shaffert.**</u>  Ms. Shaffert, a former Deputy General Counsel and Senior Director, voluntarily left the Company in January 2006 – over <u>five years</u> before the events giving rise to Plaintiff's claim.  Plaintiff cannot rely on the hearsay and inadmissible testimony of Ms. Shaffert to support her theory of pattern and practice discrimination at Booz Allen.  Ms. Shaffert testified she had <u>no knowledge</u> that any of the decisions related to her were based on her gender or her age, that the decision to remove her management responsibilities was based on personality conflicts with other lawyers – a well settled non-discriminatory factor[5] – and that she

---

[5]    <u>See</u> <u>Scott v. Health Net Fed. Servs., LLC</u>, 807 F. Supp. 2d 527, 536 (E.D. Va. 2011) (Trenga, J.), <u>aff'd</u>, 463 Fed. App'x. 206 (4th Cir. 2012) (noting the well-settled premise that personality conflicts in the workplace do not themselves prove discriminatory animus).

voluntarily made the decision to leave Booz Allen and was not forced to leave or demoted from her position as Senior Director.  (Ex. 8, R. Shaffert Dep. Tr. 39:4-41:16, 43:8-44:13.)   Indeed, Ms. Shaffert testified that after she was hired by Mr. Appleby, he promoted her "a number of times" during her tenure in the Law Department.  (Id. 9:21-16:17 (emphasis added).)  Finally, like the other alleged "me too" witnesses, Ms. Shaffert did not testify that any decisions were made based on her age and she cannot be used to support Plaintiff's "older woman" argument.

In addition to the seven women discussed above, Plaintiff has also identified Velma Booth, Sheryl Jones, Eileen Kabay, Chimisa Walker, Valaree Moodee and Joyce Doria on her Amended Witness list as possible witnesses.  Defendant objects to each of these women for the same reasons articulated above and moves the Court to preclude Plaintiff from proffering them as witnesses.  As a threshold matter, Plaintiff has produced no evidence that any of these additional "me too" witnesses complained of discrimination or retaliation while at Booz Allen. Additionally, and not insignificantly, none of them were considered in the Law Department's restructuring in 2011.  Moreover, none of these women were working in attorney positions or reported to Mr. Appleby or anyone else in the Law Department.  As such, none of the employment decisions pertaining to them are relevant to Plaintiff's claims.

Moreover, the testimony from these additional witnesses involve decisions that are so remote in time to Mr. Appleby's decision in January 2011 (e.g. the WTB President election involving Ms. Doria occurred in 2001 and she retired from the Firm in 2006); or would center on completely different decisionmakers that such testimony fails under Rule 403, as any relevancy to Plaintiff's claims would be substantially outweighed by the not only unfair prejudice it would inflict on Defendant, by requiring Booz Allen to defend multiple mini-trials, but would also

confuse and mislead the jury as to the actual matter before them – whether <u>Plaintiff</u> was discriminated against because of her age or gender.

The fact that Plaintiff has identified a dozen or so women in a ten year period who worked at a company with 25,000 employees on any given day is neither remarkable nor probative. It is not evidence of either a "pattern or practice" of discrimination at the Firm or discriminatory animus towards Plaintiff, as she has not proffered any statistical evidence or other factual basis to enable either this Court or the trier of fact to infer that these cases are emblematic of a statistically significant disparity between the Firm's treatment of women and men.

For the reasons articulated above, the testimony from each of the proffered witness fails to satisfy the standard set forth by <u>Mendelsohn</u>, and its progeny. As the Fourth Circuit held in <u>Kozlowski v. Hampton School Board</u>:

> We recognize that at some point, prior acts of discrimination or discriminatory statements are sufficiently removed in time and/or similarity from the current dispute that their probative value is slim and their exclusion justifiable.

77 Fed. App'x. 133, 149 (4th Cir. 2003). This rule of law is even more applicable to the testimony outlined above since, unlike the testimony in <u>Kozlowski</u>, the proffered testimony does not involve actual statements that are arguably discriminatory in nature. Instead, Plaintiff's proffered "me too" testimony involves testimony from thirteen different witnesses, who worked in departments across the Firm at different levels than Plaintiff, about personnel decisions with no connection to Plaintiff generally or to the Law Department's restructuring in January 2011 specifically.

As such, if allowed at trial, Booz Allen will have to prove person by person, that in each case, its decisions – made by a variety of separate decision-makers apart from Mr. Appleby were based upon legitimate, nondiscriminatory reasons. Just as in <u>Kozlowski</u>, this process will require

Booz Allen to proffer multiple witnesses who otherwise would not be called at trial since they have no knowledge of Plaintiff or relationship to her claims; thereby creating multiple mini-trials. Plaintiff's counsel admitted as much during oral argument when she stated that she intends to attempt to proffer a prima facie case of discrimination as to each of these individuals. (Ex. 9 Mar. 6, 2015 Hr'g Tr. 39:12-25.) As the Kozlowski Court found, such testimony is properly excluded under Rules 401 and 403.[6]

Accordingly, for the reasons articulated above, any testimony or documentary evidence pertaining to the "me too" witnesses identified above must be precluded at trial. Id.

**D.     Plaintiff Cannot Present Testimony at Trial Regarding Her Claims of Front Pay or Back Pay After September 8, 2014.**

Front pay is "awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 846 (2001). The United States Supreme Court and the Fourth Circuit Court of Appeals have held that front pay is an equitable remedy. See id. (under Title VII and the ADA); Duke v. Uniroyal, Inc., 928 F.2d 1413, 1423 (4th Cir. 1991), cert. denied, 502 U.S. 963 (1992) (under the ADEA). As such, the award and amount of front pay are questions for the court, not the jury. Duke, 928 F.2d at 1424.

As set forth below, Plaintiff should be precluded from introducing at trial any evidence pertaining to her claim for front or back pay because Plaintiff's retained expert, Joel M. Morse,

---

[6]     Importantly, to the extent any of these women are permitted to testify at trial – which would be contrary to the controlling legal authority in this Circuit – they cannot testify that they were discriminated or retaliated against. As the Fourth Circuit has stated, such testimony would be improper opinion testimony and invade the province of the jury. See United States v. Perkins 470 F.3d 150, 158 (4th Cir. 2006) (holding that "conclusory testimony that a company engaged in 'discrimination,' that a landlord was 'negligent,' or that an investment house engaged in a 'fraudulent and manipulative scheme' involves the use of terms with considerable legal baggage; such testimony nearly always invades the province of the jury" and is inadmissible).

Ph.D., cannot provide expert testimony at trial regarding Plaintiff's purported economic losses stemming from her back and front pay claims. Dr. Morse's opinions are not based upon sufficient facts or data as required by Rule 702, and were untimely supplemented in violation of the Court's August 27, 2014 Discovery Plan.

Federal Rule of Evidence 702, in conjunction with Federal Rule of Evidence 403, governs the admissibility of expert testimony.  Rule 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  In addition to the constraints of Rule 702, Rule 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.

Within the context of these rules, the Court serves as a gatekeeper with broad latitude to ensure that only testimony that is both relevant and reliable is admitted into evidence.  See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999) (citing Daubert v. Merrell Dow Pharms., 509 U.S. 579, 589-90 (1993)); see also Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001) (internal quotations and citation omitted) (a court must "ensure that any and all scientific testimony … is not only relevant, but reliable" because "expert witnesses have the potential to be both powerful and quite misleading")).  Factors that a court should consider in its gatekeeping analysis include, but are not limited to: (1) whether the methodology can and has been tested; (2) whether the methodology is subject to peer review; (3) the potential rate of error;

and (4) the general acceptance of the methodology.  See Westberry v. Gislaved Gummi AB, 178 F.3d 257, 260 (4th Cir. 1999) (citing Daubert, 509 at U.S. 593-94).  The party seeking to admit expert testimony must demonstrate relevance and reliability by a preponderance of the evidence.  See Cooper, 259 F.3d at 199 (citing Daubert, 509 U.S. at 592 n.10).  The relevance predicate requires that the proffered expert testimony must properly fit the facts of the case, meaning that the court must determine "whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." United States v. Lester, 254 F. Supp. 2d 602, 606 (E.D. Va. 2003) (internal quotation omitted).   As demonstrated below, Dr. Morse's testimony fails to satisfy this standard and should be excluded.

### 1.   Relevant Factual Background

Plaintiff identified Joel Morse, Ph.D. to testify at trial as her economic damages expert. Specifically, Plaintiff retained Dr. Morse to opine on the present value of the economic losses he believes Plaintiff has incurred. On October 14, 2014, Plaintiff produced Dr. Morse's expert report.  (See Ex. 10, J. Morse Report.)  In his report, Dr. Morse estimated damages based on several factually deficient assumptions.

First, Dr. Morse assumed that, had Plaintiff remained employed at Booz Allen, she would have earned an annual salary of $302,240, or $336,516 inclusive of benefits.  (Id., page 3 of Calculations & Data Inputs.)  Dr. Morse made this assumption notwithstanding the fact that he did not request any information about the average salary at Booz Allen for any particular year or series of years or request the average salary information for Principals at the Firm.  (Ex. 11, J. Morse Dep. Tr. 32:1-35:2.)  In actuality, the Record evidence unequivocally establishes that Dr. Morse's assumption has no basis in fact, as the maximum salary allowed for Principals at Booz

Allen since 2013 has been $245,000, with a cap on total compensation of $275,000.  (Ex. 12, 30(b)(6) Dep. Tr. 151:17-153:5.)

Second, Dr. Morse assumed a post-termination income for Plaintiff of $16,500.00.  (Ex. 10 at 4.)  Dr. Morse stated that the sole basis for his assumption that Plaintiff's earnings would have fallen to this level was because that was the amount shown on her 2013 tax returns.  (Id.)  At his deposition, Dr. Morse testified, however, that in reaching his opinions, he did not interview the Plaintiff regarding her job search efforts or the basis for her $16,500 of income reported on her 2013 tax returns. (Ex. 11, J. Morse Dep. Tr. 21:1-7.)

Moreover, he failed to ask for her pay stubs (id. 24:16-22) or any other documentations that would have evidence her earnings in 2014, and in fact, stated that he "didn't think of it" (id. 25:1-5).  Dr. Morse did not know Plaintiff had in fact obtained a part-time job with a law firm until *Defense counsel* informed him of this fact; and Dr. Morse, therefore, unquestionably failed to take into account any income she had received from that source or otherwise incorporate it into his post-termination income analysis.  (Id. 20:6-10.)  In fact, Dr. Morse conceded that he did not rely upon any information regarding Plaintiff's 2014 income even though such information was available and, in fact, that he intentionally ignored such data as he did not request it from either Plaintiff or her counsel.  (Id. 22:8-24:3; 27:15-28:13.)

Dr. Morse stated his approach was not negligent because "[c]ounsel informed me that [Plaintiff] had not been particularly successful in closing what your expert, Mr. White, called the gap between prior income and parity with that prior income over the ensuing years."  (Id. 28:3-7.) [7]

---

[7]     The complete lack of reliability of this figure is shown not only by the fact that it constitutes an 80% decrease in her earning potential from what she had while working at Booz Allen (with no explanation as to why), but also because Dr. Morse did not include any analysis

Third, Plaintiff assumed that Plaintiff would have continued to work until age 65.  (Id. 36:2-16.)   Again, Dr. Morse made this assumption without having spoken to Plaintiff or otherwise determining if this assumption in fact reflected her actual intention.  (Id.)

On January 14, 2015  –  nearly three months after the Court's August 27, 2014 Discovery Plan deadline ordering expert reports to be produced and over four weeks after the close of discovery, Dr. Morse attempted to supplement his report and correct one – but not all – of the assumptions above.  (Ex. 13, Jan. 14, 2015 J. Morse Suppl. Report.)  In his supplemental report, Dr. Morse modifies his post-termination income estimate for Plaintiff from $16,500.00 to $36,491.39, reflecting the amount of income reported on Plaintiff's 2014 paystubs (id. 1, fn. 1); but, Dr. Morse still failed to address the other factually baseless assumptions addressed above. Moreover, given the untimeliness of Dr. Morse's supplemental report, Defendant had no opportunity to depose Dr. Morse on his revised calculations.

### 2.        Dr. Morse's multiple assumptions render his opinion inherently unreliable.

Dr. Morse's opinions regarding Plaintiff's economic losses are based upon two assumptions that are factually void and wholly speculative.  The first is his assumption regarding Plaintiff's anticipated salary, had she remained employed at Booz Allen.  The second is his assumption regarding Plaintiff's post-employment income level.   Since neither of these assumptions is grounded in fact, Dr. Morse should not be permitted to offer opinions at trial regarding Plaintiff's purported economic loss since both of these assumptions serve as the foundation for his overall loss calculation. Though courts have afforded experts wide latitude in

---

of Plaintiff's job search efforts – which were tepid at best – in the face of Plaintiff's counsel's statement. The undisputed facts evidence that while Plaintiff began her job search in February 2011, she never engaged in any diligent effort to find similar employment.  She only managed to find a few interviews and did not engage in any meaningful networking process to identify other jobs.

picking and choosing the sources on which to base opinions, courts nonetheless are required to examine the reliability of those sources. <u>Westberry</u>, 178 F.3d at 261. In assessing reliability, the court must determine whether the expert testimony has a "traceable, analytical basis in <u>objective</u> fact." <u>Bragdon v. Abbott</u>, 524 U.S. 624, 653 (1998) (emphasis added). An unsupported opinion cannot objectively assist the fact finder to understand the evidence or to determine a fact in issue. <u>See</u> <u>Tyger Const. Co. v. Pensacola Const. Co.</u>, 29 F.3d 137, 142 (4th Cir. 1994), <u>cert.</u> <u>denied</u>, 513 U.S. 1080 (1995) (holding that an expert's proffered testimony is inadmissible "when it is based on assumptions that are speculative and are not supported by the record"). In addition, expert opinions based upon a biased selection of facts are unreliable and inadmissible under <u>Daubert</u>'s well-established standards. <u>See, e.g.</u>, <u>C & O Motors, Inc. v. Gen. Motors Corp.</u>, No. 2:05-0835, 2007 WL 2156587, at *6 (S.D.W. Va. July 25, 2007) (precluding defense expert from testifying about alleged lost profits where the proposed calculation of lost profits was based solely on defendant's sales in 2001 – a year in which sales were dramatically different than the previously years' figures).

As set forth above, Dr. Morse's assumption that Plaintiff would have earned $16,500.00 for the remainder of her working life not only completely ignores her earning capacity but does not in fact represent the amount she earned even in 2014. Dr. Morse has no training or expertise as a vocational expert and has not been retained to determine Plaintiff's post-resignation employability. Dr. Morse's assumption that Plaintiff earned and will continue to earn approximately $16,000, or $36,491.39 for that matter, for the remainder of her professional working career is an assumption that Dr. Morse is not qualified to make. He has no education, training or experience in the labor market for attorneys in the Washington Metropolitan area or any education, training or experience as a vocational counselor who has worked with attorneys at

Plaintiff's level seeking employment.  See Fed. R. Evid. 702; see also Norfolk & Portsmouth Belt Line RR Co. v. M/V Marlin, No. 2:08cv134, 2009 WL 3363983, *6-7 (E.D. Va. Oct. 9, 2009) (granting motion in limine to exclude expert testimony on certain topic because although proffered expert had extensive experience evaluating the nature and extent of damages after an incident, he had no experience, training or specialized knowledge in estimating the pre-incident value of a structure).

Similarly, Dr. Morse's erroneous assumption that Plaintiff would have continued to earn over three-hundred thousand dollars a year had she stayed employed at Booz Allen is flatly contradicted by the undisputed testimony in the Record that the pay band for Principals at Booz Allen was capped in 2013 at $275,000.  Accordingly, both of the central inputs for Dr. Morse's economic loss calculations have no reliable basis in fact and must be stricken.

This is the same conclusion the United States District Court for the District of Maryland reached regarding the opinion of the same expert as in the instant case. In Randolph v. ADT Sec. Servs., No. 09-1790, 2012 U.S. Dist. LEXIS 144958, at *7-8 (D. Md. July 23, 2012), the court struck Dr. Morse's opinions regarding the plaintiffs' economic losses.  In Randolph, just as here, Dr. Morse premised his entire calculation upon an assumption regarding the plaintiffs' earning potential post-employment that had no basis in fact.  Id.  As a result, the court precluded Dr. Morse from opining on the plaintiffs' actual economic losses.  Id.; see also PBM Prods., LLC v. Mead Johnson Nutrition Co., No. 3:09cv269, 2010 WL 56072 at *5-6 (E.D. Va. Jan. 4, 2010), aff'd sub nom, 639 F.3d 111 (4th Cir. 2011) (holding that "abstract, theoretical views of potential harm," that were based on an "arbitrary assumption not based on any factual or economic foundation" cannot provide the basis of a damage estimate).

Accordingly, for the foregoing reasons, Plaintiff cannot be allowed to call Dr. Morse to testify about her purported economic losses.

## III.    CONCLUSION

For the reasons stated above, and any made in Reply to Plaintiff's Opposition hereto and at oral argument, Defendant moves this Court for entry of an order precluding Plaintiff from presenting any evidence, argument, or testimony at trial regarding: (1) the performance and work history of William Meyers and Douglas Manya; (2) the "me too" witnesses Plaintiff has proffered who have no nexus to Plaintiff or her claims; and (3) her claims of front and back pay.


BOOZ ALLEN HAMILTON INC.
By Counsel

    /s/
Stephen W. Robinson (VSB #15337)
Sarah A. Belger (VSB #67947)
Melissa L. Taylormoore (VSB #75506)
MCGUIREWOODS LLP
1750 Tysons Blvd., Suite 1800
Tysons Corner, VA 22102
Telephone: (703) 712-5469
Facsimile: (703) 712-5258
srobinson@mcguirewoods.com
sbelger@mcguirewoods.com
mtaylormoore@mcguirewoods.com

## CERTIFICATE OF SERVICE

I hereby certify that on the March 20, 2015, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send notification of such filing (NEF) to the parties listed below:

John R. Ates (VSB #71697)
Ates Law Firm, P.C.
1800 Diagonal Road
Suite 600
Alexandria, VA 22314
703-647-7501 (T)
703-229-6430 (F)
j.ates@ateslaw.com

I also certify that a true copy of the foregoing will be served via electronic mail and first class mail upon the following non-filing user:

Linda M. Correia (admitted *pro hac vice*)
Correia & Puth, PLLC
1775 K Street, N.W., Suite 600
Washington, D.C. 20006
202-349-1044 (Direct)
202-602-6501 (F)
202-602-6500 (T)
lcorreia@correiaputh.com
*Counsel for Plaintiff*

　　　　　　　　　　　　　　　　/s/
Stephen W. Robinson (VSB #15337)
*Counsel for Defendant Booz Allen Hamilton Inc.*
McGuireWoods LLP
1750 Tysons Blvd., Suite 1800
Tysons Corner, VA 22102
Telephone: (703) 712-5469
Facsimile: (703) 712-5258
srobinson@mcguirewoods.com

64888596_3

24