UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| CARLA CALOBRISI | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:14-cv-00996-AJT-MSN |
| BOOZ ALLEN HAMILTON INC., | ) |
| Defendant. | ) |
| | ) |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION IN LIMINE

Plaintiff Carla Calobrisi, by counsel, hereby moves this Court for an Order precluding Defendant Booz Allen Hamilton, Inc. ("Booz Allen" or "Defendant") from discussing in voir dire, in opening statement or at trial (1) it's supposed expert testimony or other expert evidence, such as expert reports; (2) testimony or other evidence relating to the purported "statistics" in Defendant's Motion for Summary Judgment and attached Meyers Third Declaration; and (3) testimony or other evidence concerning Ms. Calobrisi's performance and qualifications.  Counsel for Plaintiff hereby certify pursuant to Rule 26(c) that counsel have made good faith efforts to resolve the below matters with opposing counsel, but to no avail.

## I. Defendant's Proposed Expert Testimony and Reports Should be Excluded

For the reasons set forth below, Defendant should not be permitted to discuss during voir dire, in opening statements or at trial or otherwise present testimony and other evidence, such as expert reports, of each of Defendant's proposed expert witnesses: Mr. Stuart TenHoor, Esq., Dr. Paul White, and Dr. Susan Trachman.

"When a party seeks to admit any expert testimony, the district court's obligation is 'gate-keeping.'" *DNT, LLC v. Sprint Spectrum, LP*, 2010 U.S. Dist. LEXIS 12420, *8 (E.D. Va.

Feb. 11, 2010) (citing *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 261 (4th Cir. 2005)). In other words, since "expert witnesses have the potential to 'be both powerful and quite misleading,'" the Court must "ensure that any and all [] testimony . . . is not only relevant, but reliable." *Id.* at *8 (citing *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001)).

### a. Mr. Stuart TenHoor's Testimony and Expert Report Should be Excluded from Trial

Mr. TenHoor's opinion, at a minimum, is not "based upon sufficient facts or data." Fed. R. Evid. 702. Mr. TenHoor is a legal search consultant. *See* Ex. 1, TenHoor Report. In his report, Mr. TenHoor lists a litany of strategies that Ms. Calobrisi could have undertaken (in addition to what she had already done to try to secure employment) that "*might*" have resulted in a job; however there is obviously no guarantee that any of the strategies listed by Mr. TenHoor would have resulted in anything. *Id.* These strategies included such innocuous things as "participate in the American Bar Association" and "networking." *Id.* at 4. In fact, Mr. TenHoor's report is pure speculation. It fails to identify even one job that is comparable in terms and conditions of employment, supervisory responsibility, compensation, and benefits that Ms. Calobrisi would or could have obtained, but for which she allegedly failed to apply. Mr. TenHoor also speculates about what Ms. Calobrisi's compensation could or should have been and his calculations are not based on any data or facts. *See id*. He does not cite to *anything*, other than his "professional judgment" – not any data, or any competent evidence – for the proposition that Ms. Calobrisi "would have earned in the $150,000 to $200,000 range at a law firm" or "$150,000 to $200,000 in a company." *Id.* at 5. Moreover, Mr. TenHoor asserts in his report that Ms. Calobrisi could have found another "real estate attorney position" within approximately one year of her

2

demotion, yet this estimate is pure speculation, based on nothing more than thin air. Mr.

TenHoor is like the expert in *Davis v. Old Dominion Tobacco Co*, because there is no indication

in his report that Mr. TenHoor possessed adequate knowledge or understanding of Ms.

Calobrisi's job responsibilities at Booz Allen. *See Davis v. Old Dominion Tobacco Co*., No.

2:09-cv-603, 2010 U.S. Dist. LEXIS 144925, *9-10 (E.D. Va. Nov. 5, 2010) (the expert had "no

knowledge of what plaintiff's responsibilities were . . . [and] without such knowledge, his

opinion . . . is not based on sufficient facts or data and will not assist the trier of fact.").

Moreover, "[e]xpert testimony, in order to be reliable, must be based on scientific, technical, or

other specialized *knowledge* and not on belief or speculation, and inferences must be derived

using scientific or other valid methods." *Scott v. Mid-Atlantic Cable, Install., LLC*, 2006 U.S.

Dist. LEXIS 50767, *4 (E.D. Va. July 25, 2006) (citing *Oglesby v. General Motors Corp.,* 190

F.3d 244, 250 (4th Cir. 1999)) (emphasis in original). Since Mr. TenHoor's report is not based

on any facts, data, or specialized knowledge, and his inferences are not derived from any valid

methods, his testimony and report should be excluded at trial, including not being the subject of

any discussion during voir dire or opening statements.

Additionally, since Mr. TenHoor's report (and his testimony) are nothing more than

speculation, they are not helpful to (and could confuse) a jury if the jury were to believe that the

job-searching strategies suggested by Mr. TenHoor are anything more than speculation and

suggestion. "Of course, to be admissible under Rule 702, proffered expert testimony must still be

helpful to the trier of fact." *Piankatank River Golf Club, Inc. v. Selective Way Ins. Co*., 2009 U.S.

Dist. LEXIS 40027, *9 (E.D. Va. May 11, 2009). Finally, Mr. TenHoor's report constitutes

inadmissible hearsay because Defendant intends to offer it into evidence to prove the truth of the

matter asserted. Fed. R. Evid. 801, 802. For these reasons, this Court should exclude Mr. TenHoor's testimony and expert report at trial, including not being the subject of any discussion during voir dire or opening statements.

**b.  Dr. Paul White's Testimony and Expert Report Should be Excluded from Trial**

Dr. Paul White relies on Mr. TenHoor's faulty assumptions and bases all of his calculations on the base salary Mr. TenHoor created that fails to have any basis whatsoever in the facts and data of this case. *See* Ex. 2, White Report. Additionally, Dr. White fails to take into account Defendant's own alleged change to Defendant's compensation structure – most importantly the $275,000 total compensation cap. *See* Ex. 3, 30(b)(6) Tr. 152:1-4. In addition, Mr. White's report constitutes inadmissible hearsay because Defendant intends to offer it into evidence to prove the truth of the matter asserted. Fed. R. Evid. 801, 802. For these reasons, his testimony and report should be excluded from trial, including not being the subject of any discussion during voir dire or opening statements.

**c.  The Testimony and Expert Reports of Messrs. TenHoor and White Should be Excluded on Additional Grounds**

Defendant apparently intends to offer the testimony of Messrs. TenHoor and White in support of its affirmative defense of "failure to mitigate." *See* Answer, ECF No. 165 p. 19, ¶ 10. In establishing its defense, Defendant bears the burden of proving that Ms. Calobrisi failed to "exercise 'reasonable diligence' in finding other suitable employment." *Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1277 (4th Cir. 1985) (quoting *Ford Motor Co. v. EEOC,* 458 U.S. 219, 231 (1982), *superseded on other grounds*). Where Plaintiff has exercised reasonable diligence, defendant bears the burden of proof that substantially equivalent employment positions were available. *Martin v. Mecklenburg Cnty.*, 151 F. App'x 275, 282-283 (4th Cir.

4

2005); *Rasimas v. Michigan Department of Mental Health*, 714 F.2d 614, 623 (6th Cir. 1983);

*Floca v. Homcare Health Services, Inc.*, 845 F.2d 108, 111 (5th Cir. 1988); *Anastasio v.*

*Schering Corp.*, 838 F.2d 701, 707 (3d Cir. 1988); *Dailey v. Societe Generale*, 108 F.3d 451, 456

(2d Cir. 1997).

  In *Brady*, the court concluded that a plaintiff who had searched for substantially

equivalent employment for one year was "entirely reasonable" in accepting lesser employment,

even though he no longer actively sought employment substantially equivalent to the position he

was denied due to discrimination. 753 F.2d 1269; *Taylor v. Republic Servs., Inc.,* 968 F. Supp.

2d 768, 801 (E.D. Va. 2013) (same). The case law makes clear that a plaintiff's duty of

"reasonable diligence" does not mean that Ms. Calobrisi must "go into another line of work,

accept a demotion, or take a demeaning position." *Ford Motor Co. v. EEOC*, 458 U.S. at 231;

*Williams v. Albemarle Board of Education*, 508 F.2d 1242 (4th Cir. 1974); *Brady*, 753 F.2d at

1277; *Taylor v. Republic Servs., Inc.,* 968 F. Supp. 2d 768, 801 (E.D. Va. 2013).

  When asserting a failure to mitigate defense, an employer must present evidence that

comparable work is available and this burden is only lifted where a plaintiff makes little or no

effort to seek employment, which is clearly not the case here. *See E.E.O.C. v. Service News Co.*,

898 F.2d 958, 963 (4th Cir. 1990) (reversing district court award of back pay for a five-month

period based solely on plaintiff's testimony that "her only efforts during this period were looking

through want ads"). Even Defendant does not assert that Ms. Calobrisi failed to undertake any

search, but rather, through Messrs. TenHoor and White, it asserts that she did not do enough to

find a comparable job. (*See e.g.* Ex.'s 1-2, TenHoor and White Reports.)

  Defendant, through Messrs. TenHoor and White, has failed to present any evidence that

comparable work was available to Ms. Calobrisi. The premise of Mr. TenHoor's report and proposed testimony seems to be that Ms. Calobrisi engaged in *none* of the strategies that he suggests, when exactly the opposite is true. Mr. TenHoor failed to interview Plaintiff regarding her mitigation efforts and apparently presumes that she failed to undertake strategies that *could* have led to a job comparable in terms and conditions of employment, supervisory responsibility, compensation, and benefits. He does not point to any specific job advertisement for which she allegedly failed to apply, nor has he indicated any of his "networking strategies" would have resulted in a specific comparable job for Ms. Calobrisi. He does not point to these things because he cannot. There is no proof that there were any comparable jobs for which Ms. Calobrisi did *not* apply. As her document production makes clear, she applied for many comparable positions, but was faced with the fact that few law firms and companies seek to hire a person with her level of experience. Coming in-house from Booz Allen, Ms. Calobrisi did not have a portable book of business others with her years of experience working within a law firm might have, which would be attractive to a law firm.  Additionally, both through documents and testimony, Ms. Calobrisi has shown that she networked and reached out to her contacts, but no one was hiring. (*See e.g.* Ex. 4, Calobrisi Tr. 120-121, 281-283; Ex. 5 Calobrisi Answer to Interr. No. 19.) In any event, Defendant has failed to establish that there were comparable positions for which Ms. Calobrisi did not apply. *E.E.O.C. v. Service News Co.*, 898 F.2d 958, 963 (4th Cir. 1990). Although Defendant may argue to the jury that Plaintiff's efforts were not reasonably diligent, the jurors can assess whether her job search was reasonable based on their common sense and experience, without the need for the proposed "expert" testimony. Mr. TenHoor's testimony and report are not based on sufficient data (evidence of specific available jobs) and would not aid the jury in

evaluating Booz Allen's affirmative defense and should be excluded at trial, including not being the subject of any discussion during voir dire or opening statements.

Similarly, Mr. White bases his calculations solely on Mr. TenHoor's purported "jobs" that would have resulted in "$150,000 to $200,000" for Ms. Calobrisi. (*See* Ex. 2, White Report at 2.) He also based his calculation of what he alleges *should* have been Ms. Calobrisi's economic losses on the alleged duration of unemployment that Ms. Calobrisi *should* have endured, according to Mr. TenHoor. (*Id.*) For these additional reasons, the testimony and reports of Messrs. TenHoor and White should be excluded from trial, including not being the subject of any discussion during voir dire or opening statements.

### d. Dr. Susan Trachman's Testimony and Expert Report Should be Excluded from Trial

Dr. Trachman's opinion is not "based upon sufficient facts or data." Fed. R. Evid. 702. Dr. Trachman arrives at the untenable conclusion that Ms. Calobrisi, in less than one year after her demotion, was no longer suffering any emotional distress. *See* Ex. 6, Trachman Report.[1] Dr. Trachman bases this unseemly conclusion not on any contemporaneous observations, but on a mere two-hour interview that took place three years following the incidents at issue. Therefore, Dr. Trachman's opinion testimony and report fail to rely on sufficient facts or data and should be excluded at trial, including not being the subject of any discussion during voir dire or opening statements.

---

[1]   Pursuant to the Second Agreed Protective Order (DE #104 at Para 7), and the additional restrictions set forth by Magistrate Judge Jones at the December 4, 2014 hearing in this case, this report has been designated "Attorney's Eyes Only" and is being filed under seal with access only to counsel and their staff and Katherine Murphy of Booz Allen's law department.  *See* DE #166, December 4, 2014 Hr'g Tr. at 12-13.

In *Davis v. Old Dominion Tobacco Co*., the court excluded expert testimony by a psychiatrist on the grounds that the doctor's opinion was "not supported by facts or data gathered or examined" by the doctor and thus lacked "sufficient foundation and [were] therefore unreliable and inadmissible." *Davis*, No. 2:09-cv-603, 2010 U.S. Dist. LEXIS 144925, *9-10 (E.D. Va. Nov. 5, 2010). The court reasoned that the doctor, who was the plaintiff's treating psychiatrist, "did not see plaintiff for three months prior to [plaintiff's] signing the Release Agreement. Therefore, [doctor's] opinion with regard to plaintiff's capacity to sign the Agreement appears to be based entirely on plaintiff's self-reporting of his condition made long after he signed it, and not on [the doctor's] contemporaneous observations." *Id.* The *Davis* case should guide the Court's analysis here, where Dr. Trachman did not see or even meet Ms. Calobrisi until *three years* after Ms. Calobrisi's employment at Booz Allen ended and thus certainly did not have any opportunity to make contemporaneous or even remotely contemporaneous observations of Ms. Calobrisi.

Moreover, Dr. Trachman makes an incorrect comment about Ms. Calobrisi's credibility that is entirely outside the scope of her "expert" credentials and to which she cannot properly testify at trial. *See* Ex. 6, Trachman Report, at 6. "Determining witness credibility is the job of the jury." *Herold v. Hajoca Corp*., 864 F.2d 317, 320-321 (4th Cir. 1988). "Expert opinions which express a legal conclusion are not admissible." *Piankatank River Golf Club, Inc. v. Selective Way Ins. Co*., 2009 U.S. Dist. LEXIS 40027, *9 (E.D. Va. May 11, 2009) (citing *North River Ins. Co. v. Reinsurance Corp*., 197 F. Supp. 2d 972, 981 (S.D. Ohio 2002)). Finally, Dr. Trachman's report constitutes inadmissible hearsay because Defendant intends to offer Dr. Trachman's opinions into evidence to prove the truth of the matter asserted. Fed. R. Evid. 801,

802. For these reasons, Dr. Trachman's testimony and report should be excluded at trial,

including not being the subject of any discussion during voir dire or opening statements.

## II.   <u>Defendant's Purported "Statistical Evidence" and Any Related Testimony at Trial Should be Excluded</u>

Mr. Meyers's Third Declaration, attached to Defendant's Motion for Summary Judgment [*see* ECF 256 at 16] asserts that "as of January 20, 2011, 66.67% of the Law Department was over the age of 40 and 29.17% was over the age of 50. (*Id.*, citing Def.'s Ex. 1, Third Meyers Decl. ¶ 13.) These statistics and any testimony related to or relying upon them should be excluded from trial, or from being discussed in voir dire or in opening statement, because they are not "based upon sufficient facts or data." Fed. R. Evid. 702. In fact, there is no telling how Defendant arrived at these statistics. Defendant did not produce any such evidence during discovery and the declaration does not set forth a single factor detailing how Defendant made these calculations. [*See* ECF 256 at 16, citing Def.'s Ex. 1, Third Meyers Decl. ¶ 13.] Moreover, it fails to explain the statistics in any meaningful sense – for example, there is no indication whether these numbers are a snapshot of the Law Department or whether they were taken over a certain period of time. Nor is there any definition of the Law Department and whether it would include other peripheral but related groups such as the GO Team. Nor does it state whether this includes attorneys and support staff or just attorneys.  Additionally, there is no mention of gender statistics, which would be critical here. Because these "statistics" are not "based upon sufficient facts or data" (Fed. R. Evid. 702), they should be excluded.

These unfounded "statistics" and any related testimony should also be excluded because they are irrelevant and could be misleading and confusing to a jury. *See* Fed. R. Evid. 403. "Raw statistics devoid of any context which relates those statistics to the alleged discriminatory

practice are of minimal probative value." *Foster v. Tandy Corp.*, 828 F.2d 1052, 1057 (4th Cir. 1987) *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455 (4th Cir. 1989) (same) *abrogated in part on other grounds Bizzell v. Sprint/United Mgmt. Co.*, 2014 U.S. Dist. LEXIS 38851, 22 (W.D. Va. Mar. 25, 2014)); *see also Herold v. Hajoca Corp.*, 864 F.2d 317, 321 (4th Cir. 1988) (upholding district's court's exclusion of Defendant's statistics on relevancy grounds). The Court in *Herold* also reasoned that "the district judge could reasonably have concluded that the confusion the statistics might cause for the jury would outweigh their probative value." *Id.* at 322.

For these reasons, Defendant's purported "statistical evidence" as set forth in Mr. Meyers's Third Declaration, and any related testimony, should be excluded from trial, including not being the subject of any discussion during voir dire or opening statements.

### III. The Court Should Exclude Any Testimony by Messrs. Osborne, Meyers, and Manya Concerning Ms. Calobrisi's Performance and Qualifications

Defendant has conceded that Plaintiff has shown a *prima facie* case of age and gender discrimination. *See* Ex. 7, March 6, 2015 Hr'g Tr. at 3. Accordingly, any testimony or discussion about Ms. Calobrisi's performance is irrelevant since the parties agree that she has proven the second prong of a *prima facie* case that she was qualified to do the job and had satisfactory job performance. [*See* ECF 261 at 15.]

Defendant has taken the position in this case that Mr. Appleby was the sole decisionmaker who decided to take away Ms. Calobrisi's work and demote her. ECF 256 at 19-20.] Defendant took the position from the time the decision was conveyed to Ms. Calobrisi that it was "not about [her] performance."  Ex. 8 (BAHCAL 030000110-112 Talking Points) at 2. Plaintiff contests this with evidence that suggests that the decision was made by more than just

Appleby, [ECF 261 at 1-2, 9, 17] which Defendant denies. [ECF 264 at 5-6.] Accordingly, there is no reason for Defendant to offer evidence regarding any performance concerns or alleged shortcomings in Ms. Calobrisi's "skill set" unless and until it attempts to offer such affirmative evidence in its case in chief.  Defendant does not have any basis to present evidence of the reasons for a "consensus decision" that it denies occurred.  Therefore, testimony by Mr. Osborne or any other defense witness addressing why they "would have" supported a consensus decision to take away Ms. Calobrisi's work or demote her has no place at trial in this case, including not being the subject of any discussion during voir dire or opening statements.

Defendant cannot have it both ways – it cannot argue on the one hand that there was no consensus decision, yet also offer testimony from Messrs. Osborne, Meyers, and Manya concerning their support for the consensus decision, namely that they believed Ms. Calobrisi was not qualified to do the job. Their testimony has no relevance because their reasoning, at least according to Defendant, had no bearing on Mr. Appleby's ultimate decision to demote Ms. Calobrisi. For these reasons, this Court should exclude any testimony, including prohibiting any discussion during voir dire or opening statements, regarding or by Messrs. Osborne, Meyers, and Manya concerning Ms. Calobrisi's performance and qualifications. Messrs. Osborne, Meyers, and Manya should be precluded from testifying as to Ms. Calobrisi's performance and qualifications to do the job because these men would be deemed to have not participated in any "consensus" decision, as Plaintiff asserts, and thus their testimony as to why they joined, or would have joined, in the consensus decision is irrelevant. See Fed. R. Evid. 401 and 402.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's Motion in Limine and preclude Defendant from discussing in voir dire, in opening statement or at trial (1) it's supposed expert testimony or other expert evidence, such as expert reports; (2) testimony or other evidence relating to the purported "statistics" in Defendant's Motion for Summary Judgment and attached Meyers Third Declaration; and (3) testimony or other evidence concerning Ms. Calobrisi's performance and qualifications.

Respectfully Submitted,

  */s/ John R. Ates*
John R. Ates, Esquire (VSB # 71697)
Ates Law Firm, P.C.
1800 Diagonal Road, Suite 600
Alexandria, Virginia 22314
(703) 647-7501 (telephone)
(703) 229-6430 (facsimile)
j.ates@ateslaw.com

  */s/ Linda M. Correia*
Linda M. Correia
(*Admitted pro hac vice*)
Amber Trzinski Fox
(*Admitted pro hac vice*)
Correia & Puth, PLLC
1775 K Street, NW, Suite 600
Washington, D.C. 20006
Telephone: (202) 602-6500
Facsimile: (202) 602-6501
lcorreia@correiaputh.com
afox@correiaputh.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 20, 2015, I served the foregoing through the Court's electronic filing system to the following, which will then send a notification of such filing ("NEF") to counsel identified below:

Stephen W. Robinson
Sarah A. Belger
Melissa L. Taylormoore
McGuire Woods LLP
1750 Tysons Blvd., Suite 1800
Tysons Corner, VA 22102
srobinson@mcguirewoods.com
sbelger@mcguirewoods.com
mtaylormoore@mcguirewoods.com

Attorneys for Defendant

     */s/ John R. Ates*
John R. Ates, Esquire (VSB # 71697)
Ates Law Firm, P.C.
1800 Diagonal Road, Suite 600
Alexandria, Virginia 22314
(703) 647-7501 (telephone)
(703) 229-6430 (facsimile)
j.ates@ateslaw.com

13